Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| OFICINA DE ETICA GUBERNAMENTAL<br><br>Recurrida<br><br>V.<br><br>JOSE HIRAM SOTO RIVERA<br><br>Recurrente | KLRA202300267 | *Revisión de Decisión Administrativa* procedente de la Oficina de Ética Gubernamental<br><br>Caso Núm.: 23-06<br><br>Sobre: Violación a los Artículos 4.2 (s) y 4.3 (d) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, según enmendada |

Panel integrado por su presidenta la Juez Lebrón Nieves, el Juez Adames Soto y el Juez Pérez Ocasio[1]

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 29 de febrero de 2024.

El 9 de junio de 2023, compareció ante este foro revisor, el José Hiram Soto Rivera, señor Alcalde del municipio de Adjuntas (en adelante, parte recurrente) mediante un recurso de *"Revisión Judicial"*, y nos solicita que revoquemos la *"Resolución"* emitida el 15 de mayo de 2023, y notificada el 17 de mayo de 2023, por la Oficina de Ética Gubernamental, en adelante, OEG.

Adelantamos que, por los fundamentos que expondremos a continuación, se confirma *Resolución* recurrida.

### I

Los hechos procesales y fácticos que dan lugar al presente recurso son los que en adelante se reseñan. El 28 de julio de 2022, el Área de Investigaciones y Procesamiento de la Oficina de Ética

---

[1] Conforme a la Orden Administrativa OATA-2023-131 emitida el 14 de julio de 2023, se designó al Juez Pérez Ocasio en sustitución de la Jueza Martínez Cordero.

Gubernamental (en adelante, AIPA) presentó una *Querella* contra el recurrente, en la que le imputó haber infringido los artículos 4.2(s) y 4.3(d) de la Ley Núm. 1 del 3 de enero de 2012, conocida como Ley de Ética Gubernamental de Puerto Rico  (en adelante, Ley 1-2012 o LOOEG)[2]; y el Reglamento sobre Asuntos Programáticos de la Oficina de Ética Gubernamental de Puerto Rico (en adelante, Reglamento).[3]  Ello, al Alcalde Soto Rivera, en representación del Municipio de Adjuntas, otorgar con el señor Roberto Fernandini Torré –un pariente de un servidor público –dos contratos (números 2021-00014 y 2022-000020) y dos enmiendas a estos, sin la previa consulta a la OEG, según exige su ley habilitadora. Sostuvo la AIPA que la otorgación de los referidos dos (2) contratos y las dos (2) enmiendas otorgadas por el recurrente, configuraron cuatro (4) violaciones a la LOOEG.[4]

La AIPA sostuvo, además, que las actuaciones del recurrente "mancilla[n] la confianza en la función pública del Municipio de Adjuntas".[5]  Por estas razones, la agencia solicitó que se le impusieran las multas pertinentes, conforme al Artículo 4.7(c) de su ley habilitadora. Ley 1-2012, *supra.*[6]

Evaluadas las posturas de las partes, aquilatada la prueba ante su consideración, así como la totalidad del expediente administrativo, la Oficina de Ética Gubernamental, por conducto de su Director Ejecutivo, el licenciado Luis A. Pérez Vargas, emitió el 15 de mayo de 2023, notificada el día 17 del mismo mes y año, la *Resolución* cuya revisión nos atiene. En aludida la *Resolución,* adoptó en su totalidad, el *Informe* sometido por la Oficial

---

[2] 3 LPRA secs. 1857a y 1857b.
[3] Reglamento número 8231 del 18 de julio de 2012.
[4] Apéndice del recurso, pág. 19.
[5] *Id.*
[6] 3 LPRA sec. 1857f.[6]

Examinadora[7], donde se formularon las siguientes determinaciones de hechos:

1.  El querellado, señor Soto Rivera, se desempeña como alcalde del Municipio de Adjuntas desde el 11 de enero de 2021.

2.  El querellado es un servidor público y la autoridad nominadora del Municipio de Adjuntas con la función inherente de nombrar, ascender, remunerar y contratar.

3.  El 11 de enero de 2021 el querellado nombró al Sr. José Luis Fernandini Torres al puesto de confianza de director de Obras Públicas del Municipio de Adjuntas.

4.  El 12 de enero de 2021, se organizó la corporación *FERCON LLC* ante el Departamento de Estado.

5.  El Sr. Roberto Fernandini Torré es el presidente, representante autorizado, agente residente y único miembro de *FERCON LLC*.

6.  Las ganancias que se derivan de las operaciones de *FERCON LLC* pertenecen y se dividen entre el señor Fernandini Torré, su esposa y la sociedad legal de gananciales habida entre ambos.

7.  El señor Fernandini Torres, director de Obras Públicas del Municipio de Adjuntas, es tío del señor Fernandini Torré, presidente y representante de *FERCON LLC*.

8.  El 19 de abril de 2021, el querellado, en representación del Municipio de Adjuntas, otorgó un *Contrato de Servicios de Renta Equipo Pesado*, contrato núm. 2021-000114, con el señor Fernandini Torré, quien compareció en representación de *FERCON LLC*. Este contrato estuvo vigente desde la fecha de su otorgamiento hasta el 30 de junio de 2021, con una cantidad máxima de $16,800.00 mensuales.

9.  El 14 de junio de 2021, la Junta de Subastas del Municipio de Adjuntas publicó, en el periódico *Primera Hora*, un *Aviso de Subasta,* Subasta 21-0004, Serie 2020-2021. Entre los suministros generales que se solicitaron en el aviso se encontraba la Renta de Equipo Pesado en el Reglón 11.

10. El 28 de junio de 2021, se llegó a cabo el acto de apertura de las propuestas recibidas para la Renta de Equipo Pesado, Renglón 11, en la Subasta 21-0004, Serie 2020-2021. En este Acto comparecieron dos compañías, una de ellas

---

[7] Véase, Apéndice VI del recurso, págs. 32-42.

*FERCON LLC*, representada por su presidente, el señor Fernandini Torré.

11. El 30 de junio de 2021, el querellado, en representación del Municipio de Adjuntas, otorgó el contrato número 2021-000114-A, con el señor Fernandini Torré, quien compareció en representación de *FERCON LLC*. Este contrato tuvo el propósito de enmendar la cláusula "NOVENA" del contrato número 2021-000114 para extender su vigencia del el 1 al 31 de julio de 2021. También dispuso que los servicios se efectuarían "con cargo a la cuenta número 01-04-04-94.51" y se acompañó una *Certificación*, en la que se estableció que esta cuenta "asigna fondos suficientes para obligar este contrato por la cantidad estimada de $9,450.00 dólares".

12. El 31 de julio de 2021, el querellado y el señor Fernandini Torré otorgaron el contrato núm. 2021-000114-B. Este contrato no enmendó ninguna cláusula del contrato núm. 2021-000114, sino que corrigió la *Certificación* que se adjuntó a la enmienda realizada a través del contrato núm. 2021-000114-A, a los fines de aclarar que "[a]l computar la cuantía no se tomó en consideración la suma total del servicio del mes establecido en la enmienda. Por lo tanto, existe una diferencia en cuantía de nueve mil cuatrocientos cincuenta dólares ($9,450.00) por el servicio contratado".

13. El 2 de agosto de 2021, el querellado, en representación del Municipio de Adjuntas, otorgó un *Contrato de Servicios de Renta Equipo Pesado*, contrato núm. 2022-000020, con el señor Fernandini Torré, en representación de *FERCON LLC*. Este contrato estuvo vigente desde la fecha de su otorgamiento hasta el 31 de agosto de 2021, con una cuantía total de $4,200 semanales.

14. El 30 de agosto de 2021, tanto el querellado como el señor Fernandini Torré suscribieron la *Enmienda a Contrato de Servicios de Renta de Equipo Pesado*, como contrato núm. 2022-000020-A, el cual enmendó la cláusula "OCTAVA" del contrato 2022-000020, para extender su vigencia desde el 1 al 30 de septiembre de 2021. También dispuso que "la cuantía a pagar por los servicios provistos será de una cantidad estimada de dieciocho mil doscientos dólares ($18,200.00)" y los servicios se efectuarían "con cargo a la cuenta número 001-04-04-94.51".

15. El 20 de septiembre de 2021, la Junta de Subastas del Municipio de Adjuntas publicó un *Aviso de Adjudicación* en la Subasta 21-0004, Serie 2020-2021, para la Renta de Equipo Pesado, donde anunció a *FERCON LLC* como licitador favorecido.

16. A tenor con esta adjudicación de subasta pública, el 1 de octubre de 2021, el querellado y el señor

Fernandini Torré otorgaron un *Contrato de Servicios de Renta de Equipo Pesado*, contrato núm. 2022-000045, con vigencia desde la fecha de su otorgamiento hasta el 30 de junio de 2022, y donde se asignaron fondos ascendentes a $158,80.00.

17. El querellado no solicitó la autorización de la OEG con anterioridad al otorgamiento de los contratos que se mencionan en la *Querella* de epígrafe, suscritos ante el Municipio de Adjuntos y *FERCON LLC.*

Consecuentemente, le impuso una multa administrativa de dieciséis mil dólares ($16,000.00), por las cuatro violaciones. Se decretó, además, la desestimación y archivo de la imputación de la violación al Artículo 4.2 (s) de la Ley 1-2012, *supra.*

Inconforme con la precitada determinación de la OEG, Soto Rivera recurre ante esta Curia. En su recurso, el recurrente esgrime dos señalamientos de error:

**Primer Error**:
Erró la Oficina de Ética Gubernamental al determinar que el recurrente incurrió en cuatro (4) violaciones por el inciso (D) del Art. 4.3 de la Ley 1-2012, ya que dicha interpretación de la agencia, provoca un resultado incompatible o contrario al propósito para el cual se aprobó la legislación y la política pública que promueve.

**Segundo Error**:
Erró la Oficina de Ética Gubernamental al aplicar una multa excesiva e irrazonable que no guarda proporción con determinaciones de la propia agencia administrativa y que no está basada en criterios públicos y objetivos.

El 29 de junio de 2023, la parte recurrida compareció mediante su *"Alegato en Oposición a Revisión Judicial"*. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II**

**A. *Revisión Determinaciones Administrativas***

Según es sabido, los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados

por la Asamblea Legislativa. *Hernández Feliciano v. Mun. Quebradillas*, 2023 TSPR 6, 211 DPR ___ (2023); *OEG v. Martínez Giraud,* 210 DPR 79, 87-89 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012); *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.* No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que **si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida**. (Énfasis suplido).[8]

---

[8] Véase *Hernández Feliciano v. Mun. Quebradillas*, supra; *Super Asphalt v. AFI y otros,* supra, págs. 819-820.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud*, supra, pág. 90; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *Super Asphalt v. AFI y otros*, supra, pág. 819-820; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud*, supra*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Nuestro Máximo Foro, ha expresado que, esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el

ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.*; *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otros,* supra, pág. 819-820. Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA sec. 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía*, supra, págs. 36-37; *Torres Rivera v. Policía de PR*, supra, pág. 627. El Tribunal Supremo ha dispuesto que, la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Íd.* págs. 627-628; *OEG v. Martínez Giraud*, supra. Finalmente, nuestra más Alta Curia ha expresado que, conforme lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *Íd.*

### B. Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico

La Ley Núm. 1-2012, *supra*, fue creada con el objetivo principal de renovar y reafirmar la función preventiva y fiscalizadora

de la Oficina de Ética Gubernamental.[9] Según se ha dispuesto, uno de los propósitos principales para la creación del precitado estatuto, fue promover y preservar la integridad de los servidores públicos y de las instituciones del gobierno.[10] La Oficina de Ética Gubernamental, "fiscaliza, mediante los mecanismos y los recursos que la ley le provee, la conducta de los servidores públicos y penaliza a todos aquellos que transgreden la normativa ética que integra los valores en el servicio público".[11] Dentro de su función preventiva, busca atacar y prevenir la corrupción del Gobierno, la conducta ilegal de los empleados públicos, los conflictos de intereses, el abuso de poder y el ejercicio de influencias indebidas.[12]

En lo pertinente, el Art. 4.3 (d) de la Ley Núm. 1-2012, *supra*, dispone lo siguiente respecto a las prohibiciones relacionadas a otros empleos, contratos o negocios:

> **Artículo 4.3 - Prohibiciones relacionadas con otros empleos, contratos o negocios**
>
> [.....]
>
> (d)   La autoridad nominadora no puede llevar a cabo un contrato en el que un servidor público de la agencia o un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último tenga o haya tenido, directa o indirectamente, un interés pecuniario durante los últimos dos (2) años anteriores a su nombramiento.   Esta prohibición no aplica cuando, a discreción de la Dirección Ejecutiva, medien circunstancias excepcionales que hayan sido evaluadas con anterioridad a que la autoridad nominadora contrate con el servidor público o con un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último.

La Oficina de Ética Gubernamental está facultada para imponer sanciones a aquellos servidores públicos que actúen de forma que contravenga lo dispuesto por la Ley Núm. 1-2012, *supra*.[13] A esos efectos, respecto a las sanciones y penalidades en la

---

[9] Exposición de Motivos de la Ley Núm. 1-2012, *supra*, pág. 2.
[10] *OEG v. Martínez Giraud*, supra; *O.E.G. v. Rodríguez*, 159 DPR 98, 122 (2003).
[11] Exposición de Motivos de la Ley Núm. 1-2012, *supra*, pág. 2; Véase, *Pueblo v. Arlequín Vélez*, 204 DPR 117, 154 (2020).
[12] *O.E.G. v. Rodríguez*, supra, págs. 122-123.
[13] *OEG v. Martínez Giraud*, supra, pág. 12.

acción administrativa, el Art. 4.7(c) dispone que, quien viole lo dispuesto en el Art. 4.2 podrá ser castigado por la Dirección Ejecutiva con una multa administrativa que no excederá de veinte mil dólares ($20,000.00) por cada violación.[14] Dispone además que, en los casos que aplique, como medida administrativa se podrá ordenar la restitución.[15]

### C. Contratación Gubernamental

La Constitución de Puerto Rico establece que "[so]lo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley". Art. VI, Sec. 9, Const. PR., LPRA, Tomo 1, ed.2016, pág. 444. En virtud de este mandato constitucional, [nuestra Alta Curia ha] sido consecuente al exigir el manejo ético y apropiado de los fondos públicos. *Vicar Builders v. ELA et al.*, 192 DPR 256 (2015); *Rodríguez Ramos et al. v. ELA et al.,* 190 DPR 448 (2014); *Jaap Corp. v. Depto. Estado et al.,* 187 DPR 730 (2013). Ello, en miras de que "[l]a buena administración de un gobierno es una virtud de democracia, y parte de una buena administración implica llevar a cabo sus funciones como comprador con eficacia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa". *Génesis Security v. Depto. Trabajo*, 204 DPR 986, 997 (2020).

A esos fines, la Asamblea Legislativa ha desarrollado un andamiaje de distintos estatutos que tienen como propósito garantizar el control fiscal y regular la contratación gubernamental. *Vicar Builders v. ELA et al.,* supra, pág. 262. De igual modo, [nuestro Tribunal Supremo] ha afinado los preceptos de una sana administración pública mediante nuestra jurisprudencia. *Jaap Corp. v. Depto. Estado et al.,* supra, pág. 741. En consecuencia, la

---

[14] Art. 4.7(c) de la Ley Núm. 1-2012, 3 LPRA sec. 1857f (c).
[15] *Íd.*

facultad del Gobierno de Puerto Rico y de sus entidades para contratar y comprometer fondos públicos está limitada por estas normas.[16]

Sabemos que, en todo caso, "[l]a facultad de contratación del Gobierno de Puerto Rico y de sus entidades, está limitada por las normas estatutarias y jurisprudenciales respecto a la sana administración pública". *Génesis Security v. Depto. Trabajo,* 204 DPR 986, 998-999 (2020). Véase, Art. VI, Sec. 9, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 429. Por eso, los contratos con el Gobierno deben cumplir rigurosamente los requisitos de: (1) reducirse a escrito; (2) mantener un registro fiel para establecer su existencia *prima facie*; (3) remitir copia a la Oficina del Contralor a fin de una doble constancia de su otorgamiento, términos y existencia, y (4) acreditar que se realizó y otorgó 15 días antes. *Engineering Services v. AEE,* supra, págs. 1025-1026.

Los contratos gubernamentales deben cumplir rigurosamente con cada una de estas exigencias, "ya que sirven como mecanismo de cotejo para perpetuar circunstancial y cronológicamente esos contratos y, así, evitar pagos y reclamaciones fraudulentas". *Vicar Builders v. ELA et al.,* supra, pág. 264.

El Estado posee un gran interés en promover una sana y recta administración pública y en prevenir el despilfarro, la corrupción y el amiguismo en la contratación gubernamental. *CMI Hospital v. Depto. Salud,* 171 DPR 313, 320 (2007). En ese ánimo, nuestra última instancia judicial ha favorecido la aplicación de una normativa restrictiva en cuanto a los contratos entre un ente privado y el gobierno. Véanse: *Cordero Vélez v. Mun. de Guánica,* 170 DPR 237, 248 (2007); *Lugo v. Municipio de Guayama,* 163 DPR 208, 215 (2004). Es por eso que h[a] reiterado la rigurosidad de las

---

[16] *Id,* págs. 997-998.

disposiciones de ley que rigen la contratación gubernamental, asunto que está revestido del más alto interés público. *ALGO Corp. v. Mun. de Toa Alta,* 183 DPR 530, 533 (2011); *Cordero Vélez v. Mun. de Guánica,* supra; *Fernández & Gutiérrez v. Mun. San Juan,* 147 DPR 824, 829 (1999). La validez de este tipo de contrato se determina a base de estatutos especiales que lo regulan, y no a base de las teorías generales de contratos. *ALGO Corp. v. Mun. de Toa Alta,* supra, pág. 537, citando a *Quest Diagnostics v. Mun. San Juan,* 175 DPR 994, 1000 (2009); *Rodríguez Ramos et al. v. ELA et al.,* supra, págs. 461-462. Véase, además: *Demeter Int'l v. Srio. Hacienda,* 199 DPR 706, 729 (2018).

A su vez, el Código Municipal de Puerto Rico, Ley Núm. 107 de 14 de agosto de 2020, según enmendada, 21 LPRA sec. 7001 *et seq.*, establece en su Art. 2.014, que todo contrato otorgado por un municipio tendrá que cumplir con los siguientes requisitos:

> (a)   que conste por escrito y esté suscrito por todas las partes;
>
> (b)   que su vigencia sea prospectiva y que no incluya cláusulas de renovación automática ni tácita reconducción;
>
> (c)   que contenga una cláusula en la cual se identifica la partida presupuestaria que sufragará el contrato;
>
> (d)   que cumpla con las disposiciones de la Ley 237-2004, según enmendada, cuando se trate de [un] contrato de servicios profesionales;
>
> (e)   cualquier otro requisito contemplado por ley. Además, todo contrato será registrado en la Oficina del Contralor de Puerto Rico, en cumplimiento con la Ley Núm. 18 de 30 de octubre de 1975, según enmendada.[17] (Énfasis nuestro).

La Ley Núm. 237-2004, *supra,* enumera en su Art. 3, una serie de requisitos, tanto de forma como sustantivos, con los cuales debe cumplir todo contrato entre el Estado y un contratista. 3 LPRA sec. 8613. En específico, este Artículo requiere:

---

[17] 21 LPRA sec. 7173.

> (a) El otorgamiento de un contrato de servicios profesionales o consultivos entre un contratista y el Gobierno deberá ser prospectivo. Toda entidad gubernamental pagará únicamente por servicios rendidos.
>
> (b) Debe formalizarse por escrito e incluirse en el texto del mismo la disposición legal que faculta a la entidad gubernamental a otorgar contratos. (Énfasis suplido). *Íd.*

El resto de los incisos de esta disposición legal detalla la información que debe contener el contrato sobre el contratista, los servicios que prestará, la vigencia del contrato, la cuantía máxima a pagarse y la forma de pago. *Íd.* Más adelante, el Art. 5 de la misma ley, 3 LPRA sec. 8615, requiere que se incluya en el contrato una lista extensa de cláusulas mandatorias.

El Art. 2 de la Ley Núm. 230 de 23 de julio de 1974, según enmendada, conocida como Ley de Contabilidad del Gobierno de Puerto Rico, 3 LPRA sec. 283a, define el término "obligación" como "[u]n compromiso contraído que esté representado por orden de compra, contrato o documento similar, pendiente de pago, firmado por autoridad competente para gravar las asignaciones, y que puede convertirse en el futuro en deuda exigible". Art. 3 de la Ley Núm. 230 *supra*, 3 LPRA sec. 283b(k).

Cabe mencionar que, con relación a órdenes de compra o servicios realizados, la Ley Núm. 237-2004, *supra,* incorporó como Art. 6, 3 LPRA sec. 8616, lo siguiente:

> Toda orden de compra o servicio realizad[o] después de la fecha de efectividad de esta Ley por cualquier agencia, departamento, corporación pública o instrumentalidad del Estado Libre Asociado (a) deberá ser prospectiva, (b) deberá identificar la partida presupuestaria de la cual se pagará dicha orden de compra o servicio y, (c) agencia, departamento, corporación pública o instrumentalidad deberá entregarle al suplidor (contratista) previo a la prestación de los servicios la orden de compra generada por su sistema de contabilidad, a los efectos de que los gastos incurridos bajo la orden de compra están incluidos en el presupuesto. Cualquier orden de compra o servicio que no cumpla con los requisitos aquí establecidos será nula e ineficaz. (Énfasis nuestro).

Nuestro Alto Foro ha señalado que "[l]as distintas disposiciones estatutarias [que] regul[an] la realización de obras y contratación de servicios para el Estado y sus agencias e instrumentalidades tienen por meta la protección de los intereses y dineros del pueblo contra el dispendio, la prevaricación, el favoritismo y los riesgos del incumplimiento." *Ríos v. Municipio de Isabela,* 159 DPR 839 (2003), citando a *Cancel v. Municipio de San Juan,* 101 DPR 296, 300 (1973).

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nuestra consideración.

**III**

En apretada síntesis, el recurrente instó el recurso que nos ocupa debido a su desacuerdo con la determinación emitida el 15 de mayo de 2023, por la agencia recurrida, notificada y archivada en el expediente oficial el 17 de mayo de 2023. Mediante la aludida *Resolución,* la OEG encontró al recurrente incurso en cuatro (4) violaciones a la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.[18]  Consecuentemente, le impuso una multa administrativa de $16,000 por las cuatro violaciones.[19]

La contención del recurrente es, eminentemente, que la OEG incidió en la interpretación y aplicación de la LEGGPR al: 1) determinar que este incurrió en cuatro (4) violaciones por el inciso (d) del Art. 4.3 de la ley 1-2012; y 2) al aplicar una multa, a su juicio, excesiva e irrazonable que no guarda proporción con determinaciones de la propia agencia administrativa y que no está basada en criterios públicos y objetivos.

Arguye el recurrente que, "[d]e la propia resolución surge que se firmaron solo dos contratos entre la parte recurrente y FERCON

---

[18] LOOEG, Ley Núm. 1-2012, 3 LPRA sec. 1854 *et seq.*
[19] La Resolución dispuso, además, la desestimación de la imputación a infracción al inciso (s) del artículo 4.2 de la Ley Núm. 1-2012, *supra.*

LLC y cada uno de ellos tuvo una enmienda para extender la vigencia. Las determinaciones de hechos #8 y #11 se contradicen. No hay duda que estamos hablando de un mismo contrato con el mismo número 2021-000114. La única diferencia es que cuando se realiza una enmienda al contrato para extender la vigencia por 30 días o la cuenta donde se pagaría se mantiene el mismo número de contrato, solo se añade una letra para identificar el cambio. En este caso se identificó con el número 2021-000114-A. Ello no puede considerarse como un nuevo contrato. Sino una extensión del contrato original. Inclusive en la propia *Solicitud de Desestimación* presentada por la parte recurrente se informó la existencia de una segunda enmienda a ese contrato a los únicos efectos de corregir la certificación de la cuenta de la que se pagaría el contrato. A dicha enmienda se le identificó con el mismo número de contrato añadiéndole la letra B, es decir 2021-000114-B. De un análisis se podrá observar que se utilizó el mismo formato de las demás enmiendas. Véase determinación de hecho #12. Lo mismo ocurre con el segundo contrato entre la parte recurrente y FERCON LLC. Este segundo contrato conllevó un nuevo número de identificación, el número 2022-000020. De la misma manera se realizó una enmienda para extender la vigencia por 30 días y la cuenta de donde se pagaría. En este caso se identificó con el mismo número de contrato añadiéndole la letra A, es decir 2022-000020A. Véase las determinaciones de hechos #13 y #14. Si tomamos la definición de *contrato* que la propia LOOGE define, no tenemos duda que solo se puede considerar contrato el negocio jurídico original con objeto, consentimiento y causa tanto del contrato número 2021-000114 y el contrato número 2022-000020."

No empece a lo anteriormente argüido, el recurrente nos invita, en la alternativa, a que en la eventualidad de que no dejemos sin efecto en su totalidad las infracciones dictaminadas por la

LOOEG, determinemos que la OEG actuó irrazonablemente al concluir que existen cuatros contratos otorgados, en vez de considerar que fueron dos contratos con sus respectivas extensiones. Adujo el recurrente que, el contrato número 2021-000114 estuvo vigente por 104 días en su totalidad y el contrato número 2022-000020 estuvo vigente por 60 días en su totalidad. Esgrimió que, las extensiones de la vigencia de ambos contratos fueron por un periodo de 30 días cada una para mantener el servicio esencial del recogido de desperdicios sólidos ante la demora en la adjudicación de la correspondiente subasta pública. Arguyó que, la determinación de la OEG de que se deben considerar como cuatros contratos es una actuación irrazonable y errada en derecho que no merece nuestra deferencia.

Consideradas ponderadamente las argumentaciones de las partes, nos corresponde, en primer lugar, determinar si nos encontramos ante cuatro violaciones a la Ley 1-2012, *supra*, como resolvió el ente administrativo recurrido o si, como arguye el recurrente, se trata de dos violaciones al precitado estatuto.

Tal y como se desprende del recuento procesal y fáctico del caso, el 19 de abril de 2021, el recurrente, en representación del Municipio de Adjuntas, otorgó con Roberto Fernandini Torré, en representación de FERCON, el *Contrato de Servicios de Renta Equipo Pesado*, Contrato Núm. 2021-000114. Los otorgantes pactaron la vigencia del aludido contrato hasta el 30 de junio de 2021.

Por otro lado, la Junta de Subastas del Municipio de Adjuntas publicó el 14 de junio de 2021, el Aviso de Subasta 21-0004 para la renta de equipo pesado. El acto de apertura de las propuestas de las únicas dos compañías que comparecieron tuvo lugar el 28 de junio de 2021. Cabe mencionar que, una de esas dos compañías licitadoras fue FERCON.

El 30 de junio de 2021, el recurrente otorgó el Contrato Núm. 2021-000114-A, a los fines de extender la vigencia del Contrato Núm. 2021-000114, hasta el 31 de julio de 2021. Asimismo, los otorgantes hicieron una segunda enmienda al Contrato Núm. 2021-000114, identificado como Contrato Núm. 2021-000113-B,[20] con el propósito de *corregir* un error cometido por el Departamento de Fianzas. Ello, debido a que, en la primera enmienda *no se tomó en consideración la cuantía del servicio contratado que responde al mes establecido en la mencionada enmienda.*

Así las cosas, el 2 de agosto de 2021 el recurrente y Roberto Fernandini Torré otorgaron otro contrato intitulado *"Contrato de Servicios de Renta Equipo Pesado"*, Contrato Núm. 2022-000020, cuya vigencia se extendió hasta el 31 de agosto de 2021.

El 30 de agosto de 2021, el recurrente y Roberto Fernandini suscribieron el Contrato Núm. 2022-000022, con el fin de *extender la vigencia de este hasta el 30 de septiembre de 2021*, identificado como Contrato Núm. 2022-000022-A.

A su vez, la Junta de Subastas del Municipio de Adjuntas, el 20 de septiembre de 2021, adjudicó la subasta 21-0004, otorgando la *buena pro* a FERCON, como el licitador agraciado. A tales fines, el recurrente y Roberto Fernandini Torré otorgaron el *"Contrato de Servicios de Renta Equipo Pesado"*, Núm. 2022-000045, con fecha de vigencia hasta el 30 de junio de 2022.

Como esbozamos previamente, el texto claro del Artículo 4.3 de la Ley 1-2012, *supra*, dispone que:

**Artículo 4.3 - Prohibiciones relacionadas con otros empleos, contratos o negocios**

[.....]

(d) La autoridad nominadora no puede llevar a cabo un contrato en el que un servidor público de la agencia o un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este

---

[20] *Id.* pág. 113.

último tenga o haya tenido, directa o indirectamente, un interés pecuniario durante los últimos dos (2) años anteriores a su nombramiento. Esta prohibición no aplica cuando, a discreción de la Dirección Ejecutiva, medien circunstancias excepcionales que hayan sido evaluadas con anterioridad a que la autoridad nominadora contrate con el servidor público o con un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último.

Atinente a la controversia que nos ocupa, al revisar las disposiciones de la Ley 1-2012, *supra*, en su inciso (h), encontramos que se define a la autoridad nominadora como aquel o aquellos cuya función inherente es la de nombrar, ascender, remunerar o contratar.[21]

En particular, en su inciso (gg), el aludido precepto legal, define al servidor público como: persona en el Gobierno que interviene en la formulación e implantación de la política pública o no, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También, incluye al contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades está la de intervenir directamente en la formulación e implantación de la política pública.[22]

El precitado estatuto, a su vez, define *contrato* como "convenio o negocio jurídico para hacer determinado acto, otorgado con el consentimiento de las partes contratantes, relacionado con un objeto cierto y por virtud de la causa que se establezca. Inclusive, pero sin limitarse, a los acuerdos de bienes, de obras, de servicios y las órdenes de compra y de servicios.[23]

Por otro lado, en la definición de *pariente* incluye a los abuelos, padres, hijos, tíos, nietos, hermanos cónyuge, suegros y los

---

[21] 3 LPRA sec. 1854 (h).
[22] 3 LPRA sec. 1854 (gg).
[23] 3 LPRA sec. 1854 (ñ).

cuñados del servidor público, así como los hijos y los hijos y los nietos de su cónyuge.

Al justipreciar los hechos del presente caso, no hay espacio para dudas, respecto a que el recurrente, en calidad de autoridad nominadora, contrató con el señor Roberto Fernandini –un pariente de un servidor público –dos contratos (números 2021-00014 y 2022-000020) y dos enmiendas, sin consultar previamente a la OEG, según exige su ley habilitadora.

Por otro lado, la contención del recurrente de que las enmiendas a los referidos contratos no constituyen contratos *per sé*, no nos convence. De entrada, es menester destacar que, nuestro Tribunal Supremo ha resuelto, y citamos:

> El Estado posee un gran interés en promover una sana y recta administración pública y en prevenir el despilfarro, la corrupción y el amiguismo en la contratación gubernamental. *CMI Hospital v. Depto. Salud,* 171 DPR 313, 320 (2007). En ese ánimo, hemos favorecido la aplicación de una normativa restrictiva en cuanto a los contratos entre un ente privado y el gobierno. Véanse: *Cordero Vélez v. Mun. de Guánica,* 170 DPR 237, 248 (2007); *Lugo v. Municipio de Guayama,* 163 DPR 208, 215 (2004). Es por eso que hemos reiterado la rigurosidad de las disposiciones de ley que rigen la contratación gubernamental, asunto que está revestido del más alto interés público. *ALGO Corp. v. Mun. de Toa Alta,* 183 DPR 530, 533 (2011); *Cordero Vélez v. Mun. de Guánica,* supra; *Fernández & Gutiérrez v. Mun. San Juan,* 147 DPR 824, 829 (1999). **La validez de este tipo de contrato se determina a base de estatutos especiales que lo regulan, y no a base de las teorías generales de contratos.** *Vicar Builders v. ELA*, supra, pág. 263.[24] (Énfasis nuestro)

Cabe destacar que, el Art. 2 de la Ley Núm. 230 de 23 de julio de 1974, según enmendada, conocida como Ley de Contabilidad del Gobierno de Puerto Rico, 3 LPRA sec. 283a, define el término "obligación" como "[u]n compromiso contraído que esté representado por orden de compra, contrato o documento similar, pendiente de pago, firmado por autoridad competente para gravar

---

[24] Citando a *ALGO Corp. v. Mun. de Toa Alta,* supra, pág. 537, citando a su vez a, *Quest Diagnostics v. Mun. San Juan,* 175 DPR 994, 1000 (2009).

las asignaciones, y que puede convertirse en el futuro en deuda exigible". Art. 3 de la Ley Núm. 230 *supra,* 3 LPRA sec. 283b(k).

En el caso ante nos, ciertamente, mediante las aludidas enmiendas a los contratos en cuestión, se extendió la vigencia de los contratos en controversia, así como las cuantías a ser desembolsadas por los servicios contratados por el Municipio. Las obligaciones adicionales contraídas por el Municipio, por conducto del recurrente, conllevaron el efecto neto de afectar las arcas del Municipio. Consecuentemente, el recurrente debió mediar la consabida consulta a la agencia recurrida.

Avalar el curso de acción del recurrente en este caso daría lugar a que, en futuras ocasiones, so color de enmendar los contratos, se cometan violaciones al marco regulatorio de la contratación gubernamental, desvirtuando así, el fin que promueve nuestro ordenamiento jurídico al imponer las restricciones y salvaguardas previamente esbozadas. Como mencionamos previamente, como parte de la función preventiva, se busca atacar y prevenir la corrupción del Gobierno, la conducta ilegal de los empleados públicos, los conflictos de intereses, el abuso de poder y el ejercicio de influencias indebidas.[25] Es por lo anterior, que colegimos que, el ente administrativo recurrido no incurrió en el primer error señalado.

Por último, respecto al **segundo error señalado**, el recurrente ataca la razonabilidad de la multa y añade que, la misma no está basada en criterios públicos y objetivos.

Como esbozamos previamente, la Oficina de Ética Gubernamental está facultada para imponer sanciones a aquellos servidores públicos que actúen de forma que contravenga lo dispuesto por la Ley Núm. 1-2012, *supra.* A esos efectos, respecto

---

[25] *O.E.G. v. Rodríguez*, supra, págs. 122-123.

a las sanciones y penalidades en la acción administrativa, el Art. 4.7(c) dispone que, quien viole lo dispuesto en el Art. 4.2(b) podrá ser castigado por la Dirección Ejecutiva con una multa administrativa que no excederá de veinte mil (20,000) dólares por cada violación. Dispone, además, que en los casos que aplique, como medida administrativa se podrá ordenar la restitución. Art. 4.7(c) de la Ley Núm. 1-2012, *supra*.

En el caso que nos ocupa, es menester destacar que, a pesar de que la OEG estaba facultada para imponer una multa administrativa de hasta veinte mil (20,000) dólares por cada violación, en el sano ejercicio de la discreción y facultad que le confiere la Ley 1-2012, *supra*, limitó la misma a cuatro mil dólares ($4,000.00) por cada infracción, para una suma total de dieciséis mil dólares ($16,000.00). Ante ello, la multa impuesta no resulta irrazonable, por lo que, el segundo error señalado no fue cometido.

No podemos perder de perspectiva que, el peso de la prueba descansa sobre la parte que impugna la acción agencial. En otras palabras, el recurrente no pudo demostrar que existía otra prueba distinta que redujera o menoscabara el valor probatorio de la evidencia impugnada o probar que la determinación de la agencia no estaba basada en prueba sustancial. Por lo tanto, ante la inexistencia de prueba que derrote la presunción de corrección que gozan las decisiones de las agencias administrativas, los tribunales revisores estamos obligados a respetar las determinaciones de hecho y no debemos sustituir el criterio de la agencia por el nuestro.

En resumen, luego de un ponderado análisis del caso de marras, seguido por una cuidadosa consideración de los planteamientos que nos trajeron las partes, no encontramos en el expediente ante nuestra consideración, razón por la cual no debamos concederle deferencia a la agencia administrativa. Nada en el expediente nos lleva a concluir que la Oficina de Ética

Gubernamental abusó de su discreción al encontrar a la parte recurrente incursa en cuatro (4) violaciones al inciso (d) del Art. 4.3 de la Ley Núm. 1-2012, *supra*. Consecuentemente, los errores señalados no se cometieron.

**IV**

Por los fundamentos antes expuestos, se confirma *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones. El Juez Pérez Ocasio disidente por escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL</td></tr>
<tr>
<td><strong>OFICINA DE ETICA GUBERNAMENTAL</strong><br><br>Recurrida<br><br><br>v.<br><br><br><br><strong>JOSE HIRAM SOTO RIVERA</strong><br><br>Recurrente</td>
<td>KLRA202300267</td>
<td><strong>REVISIÓN ADMINISTRATIVA</strong><br>Procedente de la Oficina de Ética Gubernamental<br><br>Caso Núm.:<br><strong>23-06</strong><br><br><br>Sobre: Violación a los Artículos 4.2 (s) y 4.3 (d) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, según enmendada</td>
</tr>
</table>

Panel integrado por su presidenta la Juez Lebrón Nieves, el Juez Adames Soto y el Juez Pérez Ocasio.

**VOTO DISIDENTE DEL JUEZ PÉREZ OCASIO**

Por entender respetuosamente que la Oficina de Ética Gubernamental *erró* al sancionar al aquí recurrido por cuatro (4) violaciones a la LOOEG, me veo en la obligación de *disentir*, por los siguientes fundamentos.

**I.**

Soto Rivera comenzó sus funciones como alcalde del Municipio de Adjuntas el 11 de enero de 2021.[1] Ese mismo día nombró a José Fernandini Torres, en adelante José Fernandini o Director, al puesto de Director de Obras Públicas Municipales.[2]

El día 12 de enero de 2021 la compañía FERCON LLC, en adelante, FERCON, fue creada con el propósito de proveer servicios de construcción, ingeniería, acarreo de materiales, entre otras

---

[1] Apéndice del recurso, pág. 5.
[2] *Id.*

cosas.[3] Como presidente y agente autorizado, aparece únicamente Roberto Fernandini Torré, en adelante, Roberto Fernandini, quien también es sobrino de José Fernandini.[4]

El 19 de abril de 2021, Soto Rivera, en representación del Municipio de Adjuntas, otorgó el *"Contrato de Servicios de Renta Equipo Pesado"*, en adelante, Contrato Núm. 2021-000114.[5] Este contrato se hizo con Roberto Fernandini, quien compareció al mismo en representación de FERCON, con vigencia hasta el 30 de junio de 2021.

El 14 de junio de 2021, la Junta de Subastas del Municipio de Adjuntas publicó el Aviso de Subasta 21-0004 para la renta de equipo pesado.[6] El 28 de junio de 2021 se hizo el acto de apertura de las propuestas recibidas, y una de las compañías que compareció fue FERCON.[7]

El 30 de junio de 2021, el Contrato Núm. 2021-000114, fue enmendado e identificado como Contrato Núm. 2021-000114-A, con el propósito de *extenderlo hasta el 31 de julio de 2021*.[8] Además, otorgaron una segunda enmienda al Contrato Núm. 2021-000114, identificado como Contrato Núm. 2021-000113-B.[9] En esta segunda enmienda, se corrigió un error cometido por el Departamento de Fianzas. En la primera enmienda, no se tomó en consideración la cuantía del servicio contratado que responde al mes establecido en la mencionada enmienda.

El 2 de agosto de 2021, Soto Rivera otorgó un *"Contrato de Servicios de Renta Equipo Pesado"*, en adelante, Contrato Núm. 2022-000020, vigente hasta el 31 de agosto de 2021.[10] El 30 de

---

[3] Apéndice del recurso, pág. 214.
[4] *Id.*
[5] *Id.* pág. 66.
[6] *Id.* pág. 261.
[7] *Id.*
[8] *Id.* pág. 110.
[9] *Id.* pág. 113.
[10] *Id.* pág. 117.

agosto de 2021, el recurrente y Roberto Fernandini suscribieron *una enmienda* al Contrato Núm. 2022-000022, con el fin de *extender la vigencia de este hasta el 30 de septiembre de 2021*.[11] Esta enmienda fue identificada como Contrato Núm. 2022-000022-A.

El 20 de septiembre de 2021, la Junta finalmente avisó la adjudicación de la subasta 21-0004, en la cual anunció a FERCON como el licitador ganador.[12] En consecución, las partes otorgaron un *"Contrato de Servicios de Renta Equipo Pesado",* en adelante, Contrato Núm. 2022-000045, vigente hasta el 30 de junio de 2022.[13]

Posteriormente, el 28 de julio de 2022, la OEG presentó una querella contra Soto Rivera, imputándole infracciones a los artículos 4.2(s) y 4.3(d) de la LOOEG.[14] 3 LPRA secs. 1857a y 1857b. En su querella, la OEG arguye que el recurrente violó la LOOEG, al otorgar los contratos número 2021-00014 y 2022-000020.[15] Esto, ya que los mismos fueron suscritos entre el Municipio de Adjuntas y el pariente de un servidor público, sin solicitar la evaluación de la OEG, según exige su ley habilitadora. La agencia en cuestión indicó que los dos (2) contratos y *las dos (2) enmiendas* otorgadas por el municipio y Roberto Fernandini, configuraron cuatro (4) violaciones a la LOOEG.[16]

Finalmente, la OEG alegó que las actuaciones de Soto Rivera "mancilla[n] la confianza en la función pública del Municipio de Adjuntas".[17] Por estas razones, la agencia solicitó se le impusiera al recurrente las multas pertinentes, conforme al Artículo 4.7(c) de su ley habilitadora. LOOEG, supra, 3 LPRA sec. 1857f.[18]

---

[11] Apéndice del recurso, pág. 139.
[12] *Id.* pág. 263.
[13] *Id.* pág. 143.
[14] *Id.* pág. 18.
[15] *Id.*
[16] *Id.* pág. 19.
[17] *Id.*
[18] *Id.*

El 3 de agosto de 2022, el recurrente presentó una *"Solicitud de Desestimación de Querella"*.[19] Por su parte, el 23 de agosto de 2022, la OEG presentó su *"Oposición a Desestimación y Solicitud de Resolución Sumaria"*.[20] Posteriormente, el 9 de septiembre de 2022, Soto Rivera presentó una *"Replica a 'Oposición a Desestimación y Solicitud de Sentencia Sumaria'"*.[21]

Así las cosas, el 27 de octubre de 2022, la OEG declaró *"No Ha Lugar"* la solicitud de desestimación presentada por Soto Rivera, y determinó que resolvería en una fecha posterior la solicitud de resolución sumaria presentada por la agencia.[22]

El 31 de octubre de 2022, Soto Rivera presentó su *"Contestación a Querella"*.[23] Luego, el 9 de noviembre de 2022, la OEG emitió una *"Orden"*, en la que dio por sometidas las posiciones de ambas partes con relación a la moción de resolución sumaria de la agencia.

Finalmente, el 17 de mayo de 2023, la OEG notificó una *"Resolución"* en la que desestimó de la querella la alegada infracción al Artículo 4.2(s) de la LOOEG, supra, pero sostuvo la imputación de cuatro (4) violaciones al Artículo 4.3(d) de esta.[24]

Inconforme con la precitada determinación de la OEG, Soto Rivera recurre ante esta Curia. En su recurso, el recurrente plantea dos señalamientos de error:

**PRIMERO ERROR**: ERRÓ LA OFICINA DE ÉTICA GUBERNAMENTAL ALN DETERMINAR QUE EL RECURRENTE INCURRIÓ EN CUATRO (4) VIOLACIONES POR EL INCISO (D) DEL ART. 4.3 DE LA LEY 1-2012, YA QUE DICHA INTERPRETACIÓN DE LA AGENCIA, PROVOCA UN RESULTADO INCOMPATIBLE O CONTRARIO AL

---

[19] Apéndice del recurso, pág. 21.
[20] *Id.* pag. 191
[21] *Id.* pág. 274
[22] *Id.* pág. 284
[23] *Id.* pag. 287.
[24] *Id.* pág. 1.

PROPÓSITO PARA EL CUAL SE APROBÓ LA LEGISLACIÓN Y LA POLÍTICA PÚBLICA QUE PROMUEVE.

**SEGUNDO ERROR**: ERRÓ LA OFICINA DE ÉTICA GUBERNAMENTAL AL APLICAR UNA MULTA EXCESIVA E IRRAZONABLE QUE NO GUARDA PROPORCIÓN CON DETERMINACIONES DE LA PROPIA AGENCIA ADMINISTRATIVA Y QUE NO ESTÁ BASADA EN CRITERIOS PÚBLICOS Y OBJETIVOS.

El 29 de junio de 2023, la parte recurrida compareció con su *"Alegato en Oposición a Revisión Judicial"*.

**II.**

**A. Revisión Judicial de Decisiones Administrativas**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante la LPAUG, en adelante, LPAUG, autoriza la revisión judicial de las decisiones de las agencias administrativas. Ley 38-2017, 3 LPRA sec. 9601 et seq. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022).

Es harto conocido que en nuestro ordenamiento jurídico administrativo los tribunales deben brindarles la mayor deferencia posible a las decisiones administrativas por estas gozar de una presunción de validez proveniente de la experiencia que se le atribuye a las mismas. *Hernández Feliciano v. Municipio de Quebradillas,* 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud,* supra, pág. 89; *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018); *Sánchez et al. v. Depto. Vivienda et al.,* 184 DPR 95, 119-122 (2011); *Mun. de San Juan* v. *Plaza Las Américas,* 169 DPR 310, 323 (2006); *Hernández Álvarez* v. *Centro Unido,* 168 DPR 592, 615–616 (2006).

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. LPAUG, Sec. 4.5, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía,* supra, pág. 36; *Torres Rivera v. Policía de PR,* 196 DPR 606, 627 (2016). No obstante, los tribunales deberán

darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Id.*

En este sentido, nuestro más Alto Foro ha dispuesto que la deferencia que se le brinda a las decisiones administrativas cederá únicamente cuando las mismas no se encuentren basadas en evidencia sustancial, es decir, *cuando la agencia ha errado en la aplicación de la ley* y cuando su actuación resulte arbitraria, irrazonable o ilegal. *Pérez López v. Dpto. Corrección*, 208 DPR 656, 673 (2022); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *OCS vs. Universal*, 187 DPR 164, 179 (2012).

A tales efectos, ante una revisión judicial, el tribunal tomará en consideración lo siguiente: (a) presunción de corrección; (b) especialización del foro administrativo; (c) no sustitución de criterios; (d) deferencia al foro administrativo; y (e) **que la decisión administrativa solo se dejará sin efecto ante una actuación arbitraria, ilegal o irrazonable, o ante determinaciones huérfanas de prueba sustancial del expediente que constituyen un abuso de discreción**. *Mun. De San Juan v. CRIM*, 178 DPR 163, 175 (2010).

No obstante, tal norma no es absoluta. Es por ello que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. *Ruiz Matos v. Departamento de Corrección y Rehabilitación*, 2023 TSPR 144, 213 DPR ___ (2023); *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 126 (2019).

### B. **Oficina de Ética Gubernamental**

La LOOEG, *supra*, fue aprobada con el propósito principal de renovar y reafirmar la función preventiva y fiscalizadora de la OEG. Exposición de Motivos de la LOOEG. La mencionada ley es el cuerpo

normativo de la conducta de los servidores y exservidores públicos de la Rama Ejecutiva. Id. También, adoptó un Código de Ética "que reglamenta la conducta de los servidores y exservidores públicos de la Rama Ejecutiva, y que constituye un principio cardinal de esta legislación para proscribir las acciones improcedentes que ponen en riesgo la estabilidad del soporte moral del Estado". Id.

En cumplimiento con su Ley Habilitadora, y como parte de su misión, la OEG tiene la encomienda de fiscalizar la conducta de los servidores públicos, además de penalizar a los que transgreden los valores del servicio público, mediante los mecanismos y recursos que le provee la Ley. LOOEG, supra, sec. 1855. La LOOEG, supra. Esta legislación tiene como propósito establecer un servicio público íntegro, con valores, que mantenga la confianza en sus instituciones y asegure la transparencia en las funciones oficiales. *OEG v. Martínez Giraud, supra, página 91; OEG v. Rodríguez y otros*, 159 DPR 98, 122 (2003). También, busca educar e impulsar en el servicio público los valores de bondad, confiabilidad, justicia, responsabilidad y respeto que rigen la administración pública. Id.

De las definiciones que el cuerpo normativo en cuestión incluye en su Artículo 1.2, huelga destacar las siguientes dos:

> **Agencia** – los organismos de la Rama Ejecutiva del Gobierno, las corporaciones públicas, *los municipios* y sus legislaturas, las corporaciones especiales para el desarrollo municipal, los consorcios municipales, las juntas y aquellas entidades que estén bajo la jurisdicción de esta Rama.
>
> **Contrato** – convenio o negocio jurídico para hacer o dejar de hacer determinado acto, otorgado con el consentimiento de las partes contratantes, relacionado con un objeto cierto y por virtud de la causa que se establezca. Incluye, pero sin limitarse, los acuerdos de bienes, de obras, de servicios y las órdenes de compra y de servicios.

(Énfasis suplido).

En lo pertinente al recurso que de epígrafe, los incisos (b), (r) y (s) del Artículo 4.3(d), supra, establecen lo siguiente:

La autoridad nominadora no puede llevar a cabo un contrato en el que un servidor público de la agencia o un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último tenga o haya tenido, directa o indirectamente, un interés pecuniario durante los últimos dos (2) años anteriores a su nombramiento. Esta prohibición no aplica cuando, a discreción de la Dirección Ejecutiva, medien circunstancias excepcionales que hayan sido evaluadas con anterioridad a que la autoridad nominadora contrate con el servidor público o con un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último.

LOOEG, *supra*, sec. 1857b.

La legislación en cuestión delinea el compromiso legislativo de supervisar a los servidores públicos, y hacer cumplir el compromiso ético de estos, hacia sus constituyentes. Exposición de Motivos de la LOOEG.

### C. Hermenéutica

La hermenéutica legal es el proceso de interpretar las leyes; es decir, auscultar, averiguar, precisar y determinar cuál ha sido la voluntad legislativa. Este método de interpretación se utiliza, no solamente en la interpretación de estatutos, sino también, en la de los contratos, testamentos, ***reglamentos administrativos*** y cualquier otro documento. R. Elfren Bernier y J. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico*, 2da ed. rev., San Juan, Pubs. JTS, 1987, Vol. I, pág. 241; *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 717, 738 (2012).

Los tribunales tienen la facultad de interpretar las leyes cuando no son claras o concluyentes sobre un punto particular. Aún más importante, los foros judiciales pueden ejercer esta función interpretativa cuando es necesario suplir una laguna en el estatuto. *Brau, Linares v. ELA et als.*, 190 DPR 315, 340 (2014).

Además, el juez debe ponderar la prueba para descubrir elementos que con dificultad están al descubierto, y que aún con su limitada visibilidad, suelen ser las piezas que ponen en relieve el cuadro de la controversia, de manera completa. Es importante que lo que se produzca sea "una solución que sea cónsona con la idea animadora del derecho, que es la justicia". Elfren Bernier y Cuevas Segarra, op. cit., pág. 288.

Nuestro más Alto Foro ha expresado que nuestro ordenamiento jurídico "contiene una serie de disposiciones dirigidas a guiar el análisis e interpretación correcta de las leyes". *IFCO Recycling v. Aut. Desp. Sólidos, supra*. Una de las reglas de hermenéutica legal que surgen de dicho código es: "[c]uando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu". Art. 19 del Código Civil de Puerto Rico de 2020, en adelante, Código Civil 2020, Ley Núm. 55-2020, 31 LPRA sec. 5341. *Romero, Valentín v. Cruz, CEE et al.*, 205 DPR 972, 992 (2020).

En referencia particular a la controversia medular del recurso ante nos, debemos destacar que, cuando el juzgador se enfrenta al silencio de un estatuto es importante que distinga si la omisión fue intencional o involuntaria. Conforme a las normas de hermenéutica, para distinguir el carácter de la omisión, se debe recurrir al contexto o al historial legislativo. Luego de dicho análisis, si se entiende que la omisión fue intencional, el juzgador debe abstenerse de añadir lo omitido. Jorge Farinacci Fernós, *Hermenéutica Puertorriqueña: Cánones de Interpretación Jurídica,* pág. 155-156 (2019).

De otra parte, la doctrina de hermenéutica legal *casus omissus* establece que las omisiones del legislador no pueden ser curadas por los tribunales. R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 43, pág. 311. Además, Antonin

Sacalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, pág. 97 (2012). Es decir, ***"el tribunal no está autorizado a adicionar limitaciones o restricciones que no aparecen en el texto de la ley, ni a suplir omisiones al interpretarla con el pretexto de buscar la intención legislativa"***. *Com. Elect. PPD v. CEE et al.* 205 DPR 724, 755 (2020), citando a *Rosado Molina v. ELA y otros*, 195 DPR 581, 589–590 (2016). (Énfasis suplido). Más aun, cuando desde tiempo inmemorial se reconoce como principio general de derecho que "lo no prohibido está permitido". *Pueblo v. Román Feliciano*, 181 DPR 679, 687 (2011); *Campos del Toro v. Ame. Transit Corp.,* 113 DPR 337, 345 (1982). Victoria Iturralde Sesma, *Consideración crítica del principio de permisión según el cual "lo no prohibido está permitido",* pág. 211, País Vasco, España (1998) citando a Hans Kelsen, *Teoría General del Estado*, pág. 290 (1934).

No obstante, es importante que la anterior norma se armonice con el principio legal de que el texto de una ley incluye tanto lo que está expreso como lo que está implícito. Así pues, cuando un estatuto autoriza un acto, también autoriza todo lo que sea necesario para llevar a cabo ese acto. *Reading Law: The Interpretation of Legal Texts, supra,* pág. 96.

De otra parte, es preciso subrayar que el Art. 6 del Código Civil 2020, supra, 31 LPRA sec. 531, establece que:

> [e]l tribunal tiene el deber inexcusable de resolver diligentemente los asuntos ante su consideración, ateniéndose al sistema de fuentes del ordenamiento jurídico establecido. El tribunal que rehúse fallar a pretexto de silencio, obscuridad, o insuficiencia de la ley, o por cualquier otro motivo incurrirá en responsabilidad.

Si existe silencio o insuficiencia de la ley, el juzgador podrá resolver conforme a equidad, y se guiará por la razón natural y los principios generales del derecho. *Alonso Piñero v. UNDARE, Inc.,* 199 DPR 32, 53 (2017).

### D. Los contratos

En nuestra jurisdicción rige el principio de la autonomía contractual y *pacta sunt servanda*. Las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y al orden público. Artículo 1232 del Código Civil 2020, supra, 31 LPRA sec. 9753; *Betancourt González v. Pastrana Santiago*, 200 DPR 169, 182 (2018); *Martínez Marrero v. González Droz*, 180 DPR 579, 588 (2011). De manera que, los contratos en Puerto Rico se perfeccionan por el mero consentimiento, y desde ese momento, las partes se obligan al cumplimiento de lo expresamente pactado y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Artículo 1237 del Código Civil 2020, supra, 31 LPRA sec. 9771.

### a. Teoría general de los contratos

Es sabido que las partes contratantes quedan obligadas a las condiciones y los términos pactados cuando concurren los elementos de consentimiento, objeto y causa. *Engineering Service v. AEE*, 209 DPR 1012, 1027 (2022); *Betancourt González v. Pastrana Santiago*, supra. Artículo 1233 del Código Civil 2020, supra, 31 LPRA sec. 9754. Al respecto, el objeto del contrato ha de ser una cosa determinada, mientras que, la causa corresponde a "la prestación o promesa de una cosa o servicio". *Rosario Rosado v. Pagán Santiago*, 196 DPR 180, 189 (2016). Art. 269 del Código Civil 2020, supra, 31 LPRA sec. 6131.

En materia contractual, cuando los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. *Marcial v. Tomé,* 144 DPR 522, 536 (1997). Artículo 354 del Código Civil 2020, 31 LPRA sec. 6342. De lo contrario, las cláusulas del contrato deben leerse

de forma integrada e interpretarse las unas por las otras, resolviendo cualquier ambigüedad de modo que todas sus partes surtan efecto. Art. 1236 del Código Civil 2020, supra, 31 LPRA sec. 9757. Es decir, los términos de un contrato se reputan claros "cuando por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación". *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 387 (2009).

### b. Modificación y extinción de las obligaciones

Nuestro sistema de derecho reconoce varias causas de extinción de las obligaciones, entre ellas, la novación. El Artículo 1183 del Código Civil 2020, supra, expone una lista taxativa de formas en las que las obligaciones pueden novarse:

> Las obligaciones pueden novarse mediante:
> (a) la variación de su objeto o sus condiciones;
> (b) la sustitución del antiguo deudor por otro, de modo que el primero queda liberado por el acreedor; o
> (c) la sustitución del antiguo acreedor por otro, de manera que el deudor queda vinculado a él por una nueva obligación y liberado respecto al antiguo.
>
> 31 LPRA sec. 9422.

De una somera lectura al artículo precitado, surge que cuando la novación se da, una obligación se extingue, para crear una nueva. Es decir, contrario a lo dispuesto en el Código Civil de 1930, ya no cabe hablar de la novación en el contexto de una modificación en la obligación. Tan es así, que en su Exposición de Motivos, el Código Civil 2020, supra, establece lo siguiente:

> Se acoge el planteamiento de una corriente doctrinal moderna que descarta la dicotomía tradicional entre la novación extintiva y la llamada novación modificativa. Esta doctrina sostiene que la novación propiamente dicha, solamente puede ser extintiva; *que la modificación puede*

***darse en cualquier obligación***; y añadir la palabra "modificativa" a la novación provoca confusión.

Como mencionáramos, esto no siempre fue así. El Código Civil de 1930 reconocía otro tipo de novación – la modificativa. A través de los años, la jurisprudencia amplió el concepto de la novación modificativa, haciendo una distinción entre ambas y delimitando los criterios para cada una. *López v. Atlantic Southern Ins. Co.*, 158 DPR 562 (2003); *Miranda Soto v. Mena Eró*, 109 DPR 473, 478-479 (1980); *Warner Lambert Co. v. Tribunal Superior*, 101 DPR 378, 389 (1973).

Por lo antes expresado, entendemos que la jurisprudencia que por tanto tiempo fue formando el estado de derecho en cuanto a las modificaciones contractuales, continúa relevante. Solo que no bajo la figura de la novación.

Mediante la novación se extingue una obligación preexistente, naciendo simultáneamente una nueva obligación en sustitución de la original. Por su parte, la modificación de una obligación se limita a modificar alguna condición de la obligación preexistente, subsistiendo así la obligación original, pero de manera alterada. *CSMPR v. Carlo Marrero*, 182 DPR 411, 419 (2011); *P.D.C.M. Assoc. v. Najul Bez*, 174 DPR 716, 725 (2008); *Mun. de San Juan v. Prof. Research*, 171 DPR 219, 244 (2007); *United v. Villa*, 161 DPR 609, 618 (2004); *Miranda Soto v. Mena Eró*, supra, pág. 478. Es decir, si los cambios son secundarios o de poca envergadura, se trata de una modificación en la obligación. *P.D.C.M. Assoc. v. Najul Bez*, supra, pág. 725; *Mun. de San Juan v. Prof. Research*, supra, pág. 244; *United v. Villa*, supra, pág. 618; *Miranda Soto v. Mena Eró*, supra, pág. 478; *Warner Lambert Co. v. Tribunal Superior*, supra, págs. 389–390.

Al examinar la figura de la novación, es importante que el juzgador evalúe las intenciones de las partes, es decir, el *animus*

*novandi* de estos, al momento de alterar una obligación. *Mun. San Juan v. Prof. Research*, supra, pág. 244; *González v. Sucn. Cruz*, 163 DPR 449, 459 (2004); *Warner Lambert Co. v. Tribunal Superior*, supra, pág. 389.

En cuanto a la novación, hablamos de una declaración expresa y terminante que el Artículo 1183 del Código Civil 2020, supra, exige para extinguir una obligación. *Warner Lambert Co. v. Tribunal Superior*, supra, págs. 389–390. En cambio, la modificación de una obligación no requiere el *animus novandi* para alterar la misma. ***Esta se configura cuando no existe la intención de extinguir una obligación y sustituirla por otra, o cuando haya compatibilidad entre las obligaciones.*** *P.D.C.M. Assoc. v. Najul Bez*, supra, pág. 725; *United v. Villa*, supra, pág. 619.

La novación solamente se produce cuando sea así la intención de las partes, y estas lo hayan declarado de forma inequívoca. En su defecto, la novación de una obligación también se produce ***cuando la intención de novar se deriva de la incompatibilidad absoluta entre las dos obligaciones***, bien sea porque se varíe el objeto, o cuando varíen las condiciones principales de la obligación original y la nueva. *P.D.C.M. Assoc. v. Najul Bez,* supra, pág. 725; *G&J, Inc. v. Doré Rice Mill, Inc.*, 108 DPR 89, 91 (1978); *Warner Lambert Co. v. Tribunal Superior*, supra, pág. 389; *Caribe Lumber and Trading Corp. v. Marrero*, 78 DPR 868, 876 (1955).

Para determinar si hubo novación de un contrato por razón de incompatibilidad absoluta entre la nueva obligación y la antigua, hay que inferir la voluntad de las partes, examinando la naturaleza de las obligaciones y las circunstancias que rodearon los acuerdos entre estos.

### c. Contratos gubernamentales

Los contratos gubernamentales están revestidos del más alto interés público. Tan así, que nuestra Carta Magna contiene una

disposición que establece el principio de que "sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado y en todo caso por autoridad de ley". Artículo VI, Sección 9, Constitución del Estado Libre Asociado de Puerto Rico, 1 LPRA.

El interés del Estado va dirigido "a evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia, el descuido y los riesgos de incumplimiento." *Vicar Builders v. ELA*, 192 D.P.R. 256, 263 (2015); *Alco Corp. v. Mun. de Toa Alta*, 183 DP.R. 530, 536–37 (2011); *Hatton v. Mun. de Ponce*, 134 D.P.R. 1001, 1005, (1994).

De igual forma, existe una normativa de naturaleza restrictiva, en cuanto a la contratación gubernamental con entes privados, la cual ha sido reiterada consistentemente por nuestro Tribunal Supremo. A esos fines, los contratos entre el Estado y una parte privada tienen que cumplir con determinados requisitos, a saber: 1) se reduzcan a escrito; 2) se mantenga un registro fiel con miras a establecer su existencia *prima facie*; 3) se remita copia a la Oficina del Contralor como medio de una doble constancia de su otorgamiento, términos y existencia; y 4) se acredite la certeza de tiempo, es decir, haber sido realizados y otorgados quince días antes. Ley para Establecer Parámetros Uniformes en los Procesos de Contratación de Servicios Profesionales y Consultivos para las Agencias y Entidades Gubernamentales del ELA, en adelante, Ley para Establecer Parámetros Uniformes, Ley Núm. 237-2004, 3 LPRA sec. 8613(b). *CMI Hospital v. Depto. Salud*, 171 DPR 313, 320 (2007); *Ocasio v. Alcalde Mun. de Maunabo*, 121 DPR 37, 54 (1988).

La Ley para Establecer Parámetros Uniformes, en su artículo 5, dispone que "[t]oda entidad gubernamental velará que al otorgar un contrato se cumpla con las leyes especiales y reglamentación que apliquen según el tipo de servicios a contratarse". Ley para

Establecer Parámetros Uniformes, supra, 3 LPRA sec. 8611. Los contratos privados, y aquellos que envuelven entidades públicas son regulados con distinción en nuestro ordenamiento jurídico; esta es una realidad ineludible. A estos efectos, el Tribunal Supremo hizo las siguientes expresiones:

> Es por eso que hemos reiterado la rigurosidad de las disposiciones de ley que rigen la contratación gubernamental, asunto que está revestido del más alto interés público. La validez de este tipo de contrato se determina a base de estatutos especiales que lo regulan y no a base de las teorías generales de contratos.
>
> *Vicar Builders v. ELA*, supra, pág. 262-263.

Además, en lo referente al contrato gubernamental, sus enmiendas o extensiones, las mismas deben constar por escrito. El requisito de que los contratos de esta naturaleza obren por escrito "se ha convertido en uno de carácter formal y sustantivo, cuyo propósito principal es evitar el desembolso ilegal de fondos gubernamentales, fomentar la transparencia en la gestión pública." Rocío de Félix Dávila, *El Estado como contratante: hacia un nuevo modelo de contratación gubernamental*, 84 Rev. Jur. U.P.R. 1137, 1141 (2015).

De igual forma, los contratos gubernamentales tienen que ser presentados a la Oficina del Contralor para su registro oficial. Así lo establece la Ley de Registros de Contratos, en su artículo 1, al precisar lo siguiente:

> (a) Las entidades gubernamentales y las entidades municipales del Estado Libre Asociado de Puerto Rico, sin excepción alguna, mantendrán un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha de otorgamiento del contrato o la enmienda.
>
> Ley Núm. 18 de 30 de octubre de 1975, 2 LPRA sec. 97.

Sobre el referido articulado, el Tribunal Supremo señaló que es evidente la intención del legislador de crear mediante esta pieza legislativa un mecanismo de cotejo y publicidad de los contratos gubernamentales. Rodríguez *Ramos v. ELA,* 190 DPR 448, 462 (2014).

**III.**

El recurrente plantea que la OEG se equivocó en dos (2) instancias – al imputarle cuatro (4) violaciones a la LOOEG, y al haber impuesto una multa excesiva. Con respecto al primer señalamiento de error, este juez entiende que al recurrente *le asiste razón.*

De la "*Resolución*" recurrida, surge que la OEG "adopt[ó] en su totalidad" el Informe de la Oficial Examinadora, por lo que me remito a este.[25] Del mencionado informe surge que las cuatro infracciones corresponden a los dos (2) contratos y a las *dos (2) enmiendas suscritas por las partes.* En su informe, la oficial examinadora indicó que estaba "convencida de que se configur[ó], en cuatro ocasiones, el segundo elemento del artículo 4.3(d) de la LOOEG".[26] Sin embargo, como cuestión de derecho, me veo imposibilitado de otorgarle deferencia a la agencia con relación a esta interpretación.

Concuerdo con la agencia en que las obligaciones pactadas entre el recurrente y FERCON, efectuadas los días 19 de abril de 2021 y 2 de agosto de 2021 son contratos debidamente configurados. Sin embargo, entiendo que la controversia principal del caso se reduce a la interpretación de las enmiendas otorgadas los días 30 de junio y 30 de agosto de 2021.

---

[25] Apéndice del recurso, pág. 1.
[26] *Id.* pág. 13.

El juez que suscribe entiende que las referidas enmiendas no son contratos separados o nuevos. Por el contrario, las enmiendas precitadas son una modificación de los contratos originales. En vista de que solo se constituyeron dos (2) contratos, la OEG debió imponer multas únicamente por estos.

Reconozco que el trato de nuestro ordenamiento jurídico entre los contratos privados y los gubernamentales – como el caso de marras – está regulado, en ciertos aspectos, por legislación y jurisprudencia especial o específica. Es por esto que me propongo contestar la siguiente pregunta: ¿qué derecho aplicamos para determinar si las enmiendas en cuestión son contratos nuevos?

Si bien es cierto que nuestra jurisprudencia ha sido clara en que a los contratos gubernamentales le aplican las legislaciones especiales que regulan el campo o la materia del contrato, esto no puede redundar en la desunión de estos con el derecho contractual que ha regulado siempre las obligaciones. La parte recurrida intenta utilizar las palabras del caso de *Vicar Builders*, supra, para argumentar lo que he interpretado como esto último. El precitado caso indica que la **validez** de los contratos gubernamentales no se basa en las teorías generales de derecho contractual, sino en legislación especial. Esto último es cierto, en el sentido de que, al interpretar la validez de un contrato de esta naturaleza, el mismo debe pasar primeramente por el cedazo de la legislación específica que lo regula.

Ahora bien, esto no quiere decir que los principios cardinales del derecho de obligaciones y contratos, así como la interpretación en derecho y conforme a la hermenéutica no puede aplicar. De lo contrario, las expresiones de nuestro Alto Foro pudieran convertirse en un contenedor sin fondo, en el que cabe cualquier razón para no aplicar la normativa contractual que no esté expresamente en la legislación especial. Precisamente, como ha hecho en este caso la

opinión mayoritaria, quien, en su sentencia, reconocen que en efecto se configuraron dos contratos y dos enmiendas. Pero, que, a la luz del caso precitado, no están convencidos que las enmiendas sean solo enmiendas, y no contratos *per se*. ***No es posible utilizar, única y exclusivamente, las leyes habilitadoras, especiales o municipales para evaluar la validez de un contrato público.***

Con relación a *Vicar Builders*, supra, es importante constatar que, en el mismo, nuestro Tribunal Supremo se enfrentó a un contrato, que, aunque municipal, fue muy distinto al que nos ocupa – uno de arrendamiento. Además, la controversia que nos presenta el recurrente no versa sobre la validez de los contratos en cuestión, sino sobre la interpretación de sus enmiendas.

Ninguna de las legislaciones especiales que están circunscritas a las materias o los sujetos de los contratos en cuestión nos mueve a concluir que las enmiendas efectuadas no son más que eso. Sin embargo, la parte recurrida nos hace un flaco planteamiento al respecto. En su alegato, argumentó que la disposición del Artículo 1 de la Ley de Registros de Contratos, supra, que indica que las agencias están obligadas a notificar y registrar a la Oficina del Contralor, no solo los contratos que otorgue, sino sus enmiendas, tiene un significado especial. En su escrito, la OEG expone que con "este lenguaje, el legislador se aseguró de que las enmiendas a los contratos gubernamentales pasen por el mismo rigor de fiscalización que los contratos gubernamentales originales".

Como bien lo ha interpretado nuestra jurisprudencia, la publicidad de los contratos que otorgue el gobierno tiene el fin principal de salvaguardar la transparencia de las transacciones hechas con fondos públicos. Entiendo que estos fines son imposibles de perseguir si en la publicidad de los contratos, no se incluyen sus enmiendas. Si ello no fuese requerido por la Ley de Registros de Contratos, supra, sería muy fácil simular contratos

públicos, con lo que se registra en la Oficina del Contralor, en contraposición a lo que en realidad prevalezca mediante enmiendas.

Por otro lado, las normas de hermenéutica nos impiden añadirle al texto de la ley, aquello que de la misma no se desprende. A esos efectos, resulta necesario repasar lo dispuesto en la LOOEG, supra, con relación a lo que define como contrato. En su Artículo 1.2, la precitada ley establece que, para efecto de su interpretación, contrato es un "convenio o negocio jurídico para hacer o dejar de hacer determinado acto, otorgado con el consentimiento de las partes contratantes, relacionado con un objeto cierto y por virtud de la causa que se establezca. Incluye, pero sin limitarse, los acuerdos de bienes, de obras, de servicios y las órdenes de compra y de servicios". Del texto mismo de la principal pieza de legislación en la controversia ante esta Curia, nada parece indicar que las enmiendas dirigidas a extender el plazo de un contrato constituyen un contrato en sí.

Por lo antes expuestos, entiendo que procede consultar el derecho contractual que regula las modificaciones y la extinción de los contratos.

La OEG concluyó que los contratos otorgados por las partes los días 19 de abril de 2021 y 2 de agosto de 2021, por haberse suscrito en contravención a la LOOEG, supra, responden por dos (2) de las cuatro (4) infracciones imputadas. Además, expuso que las enmiendas efectuadas para ambos contratos, los días 30 de junio y 30 de agosto de 2021 respectivamente, responden, como contratos, por las otras dos (2) infracciones imputadas.

Sin embargo, para llegar a la conclusión de la OEG, resultaría imperativo determinar que los contratos adjudicados los días 19 de abril de 2021 y 2 de agosto de 2021 fueron producto de una novación. Como discutimos previamente, bajo la normativa de nuestro nuevo Código Civil 2020, para determinar que un contrato

se extinguió, o se desprende completamente de su predecesor, es necesario que se cumpla con una serie de requisitos que no veo materializados en el caso de autos.

Luego de un exhaustivo estudio del derecho, principalmente el contractual, me veo imposibilitado llegar a la misma conclusión que la agencia recurrida y la opinión mayoritaria.

Lo cierto es que no se otorgaron contratos nuevos en la fecha de las enmiendas. Las partes contratantes no dispusieron en las enmiendas, de manera expresa, la intención de novar los contratos existentes, con el fin de extinguirlos. El resultado de la interpretación hecha por la OEG es la adjudicación de una novación que no cumple con los requisitos para la misma. Para que esas enmiendas puedan ser consideradas como contratos, era necesario que las partes estipularan de manera clara y expresa la intención de terminar el contrato original. Tampoco puedo colegir la intención de estos para extinguir el contrato original, y crear uno nuevo. Además, los contratos y las enmiendas no son incompatibles ni varían en sus obligaciones principales.

Como vimos, aquí no se cumplió con ninguna de las circunstancias que podían producir la novación que la OEG, implícitamente, les adjudicó a las enmiendas. No obstante, entendemos que las enmiendas aludidas realmente fueron objeto de modificaciones.

Las enmiendas de los contratos originales solamente alteraron una característica secundaria, no principal, de los acuerdos: la fecha de vigencia. Los acuerdos principales y las obligaciones permanecieron iguales. No surge que las enmiendas a los contratos otorgados por las partes en abril y agosto del año 2021 hayan tenido la intención expresa de dejarlos sin efectos. Todo lo contrario. Entendemos que la intención de las partes contratantes era

extender los acuerdos y las obligaciones pactadas por un término adicional.

Por lo tanto, resulta ineludible concluir que los hechos del caso de epígrafe contemplan dos (2) contratos, y **_no_** cuatro (4) contratos, por lo que hubiéramos sostenido únicamente dos (2) violaciones.

**IV.**

Por los fundamentos antes expuestos, *disiento* de la decisión mayoritaria aquí emitida.

En San Juan, Puerto Rico a    de febrero de 2024.

**ALBERTO LUIS PÉREZ OCASIO**
Juez del Tribunal de Apelaciones