ENRIQUE CAMPOS DEL TORO, demandante y recurrido, *v.* AMERICAN TRANSIT CORP. y OTROS, demandados y recurrentes; RENÉ APONTE CARATINI, demandante y recurrido, *v.* POSADAS DE PUERTO RICO y OTROS, demandados y recurrentes.

*Número:* R-81-515      *Resuelto:* 20 de octubre de 1982

*María del Carmen Taboas* y *Francisco De Jesús Schuck,* de *Fiddler, González & Rodríguez,* abogados de los recurrentes; *López-Lay & Vizcarra,* abogados del recurrido René Aponte Caratini; *Morán & Rey,* abogados de Enrique Campos del Toro.

*Francisco De Jesús Schuck* y *María del Carmen Taboas,* de *Fiddler, González & Rodríguez,* abogados de los recurrentes

American Transit Corp., Milton Koffman y Bárbara Koffman; *Carlos A. López Lay,* de *López Lay & Vizcarra* y *Manuel A. Moreda,* abogados del recurrido René Aponte Caratini; *José A. Rey,* de *Morán & Rey,* abogado de Enrique Campos del Toro.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Se nos plantea el derecho del acreedor hipotecario —aun habiendo pactado la limitación de la responsabilidad del deudor al inmueble objeto de gravamen— a perseguir otros bienes del obligado hasta resarcirse del balance de débito impagado.

Mediante escritura Núm. 2 otorgada en San Juan el 5 enero, 1973 ante el notario Lic. Edward M. Borges, la corporación San Jerónimo Hotel por su Presidente, el recurrido Aponte Caratini, constituyó hipoteca sobre el inmueble de igual nombre dedicado a hotel de turismo, en garantía de pagaré por la suma principal de $7,000,000 que le prestó Empire Life Insurance Co., a vencer el 5 enero, 1976. Tanto en el pagaré como en la hipoteca pactaron prestamista y prestatario la limitación de la resonsabilidad del deudor a la finca hipotecada consignada en la siguiente cláusula:

Veintiséis: *Exoneración*

El prestatario y su acreedor expresamente convienen en que el pagaré y la hipoteca que lo asegura se emiten por el deudor y se toman por el acreedor bajo un claro entendido y acuerdo de que el prestatario jamás será personalmente responsable por suma alguna por razón de haber emitido y entregado el referido pagaré y la hipoteca que los [*sic*] garantiza, o por incumplimiento con los términos y condiciones a que están sujetos dichos pagaré e hipoteca, habiéndose acordado por prestatario y acreedor que los derechos y obligaciones de uno y otro, o de sus sucesores o cesionarios o de cualquier otra persona que por cualquier medio adquiera título o derecho —por causa y consideración— sobre los referidos pagaré e hipoteca, quedarán limitados a la propiedad inmueble objeto de esta escritura de hipoteca que garantiza el

citado pagaré; y el prestatario no será personalmente responsable del pago de suma alguna a persona alguna, por razón de haber otorgado, emitido o entregado los dichos pagaré e hipoteca. (Traducción del inglés.)

El mismo día 5 enero, 1973 San Jerónimo Hotel Corp. vendió el hotel a Milton y Barbara Koffman y a American Transit Corp., quienes en pago de prestaciones otorgaron y entregaron un pagaré por $500,000 a su vendedora, en el cual así como en la escritura de compraventa e hipoteca se incorporó el mismo pacto de limitación de responsabilidad arriba transcrito. Dicho pagaré fue cedido al recurrido Campos del Toro en pago de préstamo que facilitó a Aponte Caratini cuando éste licitaba en la subasta del referido hotel. En una tercera operación del mismo día, los recurrentes esposos Koffman y American Transit Corp. garantizaron con hipoteca sobre el mismo inmueble un pagaré por $1,500,000, representativo del préstamo por ellos tomado, de Aponte Caratini. La escritura de constitución del crédito hipotecario también contiene la transcrita cláusula 26 de concreción de responsabilidad de los prestatarios al inmueble afecto a la hipoteca.

Luego, el 31 agosto, 1973 Koffman y American Transit Corp. suscribieron un tercer pagaré por $500,000 a favor de Aponte Caratini, que garantizaron con hipoteca —como las anteriores, de responsabilidad limitada— sobre el mismo edificio.

La acreedora Empire Life Insurance Co. ejecutó su hipoteca de $7,000,000 de primer rango que fue realizada en subasta pública y fue adjudicado el inmueble a dicha acreedora; y en consecuencia, fueron cancelados los créditos posteriores de Campos del Toro y Aponte Caratini. Ambos instaron acciones en cobro de sus acreencias barridas del Registro, admitiéndose por los deudores recurrentes la existencia de los pagarés y su falta de pago, mas oponiendo como defensa única el pacto mediante el cual su acreedor renunció la garantía patrimonial universal del Art. 1811

C.C.(1) y aceptó la limitación al inmueble hipotecado de la responsabilidad de sus deudores. La sala de instancia resolvió que dicha convención restrictiva de responsabilidad del deudor es nula por contravenir la obligación básica y garantía genérica del citado Art. 1811, y por admitirse dicho pacto únicamente por autorización legislativa específica que no existía a la fecha de contratación, y sobre la cual no hubo expresión legislativa hasta aprobarse la Ley Hipotecaria de 8 agosto de 1979, que declaró en su Art. 184:

*Limitación de la obligación a bienes hipotecados.*

No obstante lo dispuesto en la sec. 2552 de este título, podrá válidamente pactarse en la escritura de constitución de la hipoteca voluntaria que la obligación garantizada se haga solamente efectiva sobre los bienes hipotecados.

En este caso la responsabilidad del deudor y la acción del acreedor, por virtud del préstamo hipotecario, quedarán limitadas al importe de los bienes hipotecados, y no alcanzarán a los demás bienes del patrimonio del deudor.

Cuando la hipoteca así constituida afectase a dos o más fincas y el valor de alguna de ellas no cubriese la parte del crédito de que responda, podrá el acreedor repetir por la diferencia exclusivamente contra las demás fincas hipotecadas, en la forma y con las limitaciones establecidas en la sec. 2568 de este título. 30 L.P.R.A. sec. 2603.

Bajo esa premisa la Sala de San Juan estimó las demandas de estos acreedores posteriores y condenó a los demandados recurrentes a pagar principal, intereses y 10% de la deuda en compensación de honorarios de abogado. El 22 enero, 1982 expedimos el auto de revisión(2) y, considerados los alegatos y memoranda de las partes, resolvemos.

---

(1) Art. 1811: "Del cumplimiento de las obligaciones responde el deudor, con todos sus bienes presentes y futuros". El Art. 156 de la Ley Hipotecaria de 1979 instruye que la hipoteca no alterará la responsabilidad personal del deudor que establece dicho Art. 1811 C.C., mas elimina expresamente tal prohibición al reconocer en su Art. 184 el pacto de limitación de responsabilidad.

(2) Comprobada la notificación en tiempo del recurso por la vía postal a los demandantes-recurridos, cuestión reglada que no afecta nuestra jurisdicción, carece de méritos la moción para desestimar la solicitud de revisión.

El Art. 1811 C.C. nunca ha sido monolito imperturbable asentado sobre una autonomía contractual en busca de nuevas formas de atenuar el rigor de las obligaciones patrimoniales. Le ha tocado convivir y contemporizar con el Art. 1207 C.C. fuente de amplísima licencia para convenir todo cuanto no sea contrario a las leyes, a la moral ni al orden público. Los recurridos limitan su ataque al pacto, a su contravención del ordenamiento por faltar autorización legislativa expresa que hiciera excepción a su favor de la norma de responsabilidad universal del deudor. El Código no debe interpretarse como veto a la benignidad del acreedor. No había necesidad del nuevo Art. 184 para la convención acordada por estos contratantes; su función es más bien declarativa de un recurso de contratación ya admitido en viejos preceptos del Código Civil a que nos remitiremos de inmediato.

La posición de los recurridos y la del juez sentenciador, al propugnar la necesidad de autorización expresa en la Ley para que pueda considerarse lícito el pacto de limitación de responsabilidad personal en la hipoteca, se disuelve al mero contacto con el fundamental principio de libertad de contratación enunciado en el Art. 1207 C.C.: "Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público." El pacto de concreción de responsabilidad —aceptado por ambos recurrentes y por el recurrido Aponte Caratini, tanto en su condición de deudor de Empire Life Insurance Co. como acreedor de Koffman y American Transit Corp.— no es contrario a la ley. A la fecha de su concertación el 5 enero, 1973 nació bajo los auspicios de legalidad del Art. 1760 C.C.: "Los contratos de prenda e hipoteca pueden asegurar toda clase de obligaciones, ya sean puras, ya estén sujetas a condición suspensiva o resolutoria." (³) Confrontado

(³) Los preceptos del Código Civil reguladores de los contratos, serán aplicables a la hipoteca cuando al contrato deba su existencia, cuando nazca de la con-

Roca Sastre con lo que llama "novedad" del Art. 140 que configura la hipoteca de responsabilidad limitada y la garantía universal sobre bienes del deudor, que según el Art. 1811 C.C. ha de responder de las obligaciones con todos sus bienes presentes y futuros, se inclina con Castán y Pérez de Alguer a admitir la licitud del pacto, restarle calidad de primicia y a concederle al nuevo artículo la modesta virtud de eliminar dudas sobre su viabilidad.[4] Señala que la limitación de la responsabilidad patrimonial pertenece al campo del Derecho Civil, que admitida la posibilidad de su restricción y la licitud del pacto no es de la incumbencia del Derecho hipotecario ocuparse de un problema que da por resuelto. Roca Sastre, *Derecho Hipotecario*, 7ma ed., 1979, T. IV, Vol. 1, pág. 397. No ha necesidad de autorización explícita la cuestionada convención entre acreedor y deudor, restrictiva de la garantía general de ley, considerando que se produce al amparo de un Código Civil que ya autorizaba las limitaciones convencionales a la responsabilidad, concretando a determinados bienes la acción de los acreedores, dejando libre el resto del patrimonio del deudor, de cuya reserva moderadora que es también excepción legislada a la universalidad del Art. 1811, son ejemplos salientes: (a) la sustracción de determinados bienes a la responsabilidad del deudor por disposición del Art. 1707 C.C. que dice: "El que constituye a título gratuito una renta sobre sus bienes, puede disponer al tiempo del otorgamiento que no estará sujeta dicha renta a embargo por obligaciones del pensionista", 31 L.P.R.A. sec. 4796; (b) la liquidación anticipada de daños en la cláusula penal que autoriza el Art. 1106 C.C., en sí la pacción de límite máximo al importe de la indemnización por incumplimiento obligacional;

---

vención de las partes. J. Morell y Terry, *Comentarios a la Legislación Hipotecaria*, 2da ed., Madrid, Ed. Reus, 1930, T. 4, pág. 186.

[4] Criterio ratificado por Marín Pérez en su monografía *La Hipoteca de Responsabilidad Limitada*, 178 Rev. Gen. Legislación y Jurisprudencia 422, 425–426 (1945).

(c) concreción de la obligación del heredero a beneficio de inventario, por disposición del Art. 977, inciso 1 C.C., al pago de deudas hasta donde alcancen los bienes de la herencia; (d) la exención de hogar seguro, 31 L.P.R.A. secs. 1851–1856; y (e) las exenciones de embargo y ejecución de aquellos bienes precisos para subsistencia de la familia, 32 L.P.R.A. sec. 1130. Así de vigorosa la presencia en el Código del recurso a la limitación de la responsabilidad del deudor, complementada por la amplia licencia contractual del Art. 1760 para asegurar con hipoteca *toda clase de obligaciones,* ([5]) es ineludible la conclusión de que no era necesario el Art. 184 incorporado a nuestra Ley Hipotecaria de 1979 para facilitar la limitación mediante pacto de la responsabilidad del deudor al valor realizado del bien ofrecido y aceptado en garantía. Parte esencial del *ius disponendi* del acreedor es su libertad para escoger la garantía de su

---

([5]) El mismo tenor de autonomía de los contratantes para diseñar el tipo de garantía toma relieve en el Art. 144 de la Ley Hipotecaria de 1893 (hoy Art. 187, Ley Hipotecaria, 1979) que disponía:

"Todo hecho o convenio entre las partes que pueda modificar o destruir la eficacia de una obligación hipotecaria anterior, como el pago, la compensación, la espera, el pacto o promesa de no pedir la novación del contrato primitivo y la transacción o compromiso, no surtirá efecto contra tercero como no se haga constar en el registro por medio de una inscripción nueva, de una cancelación total o parcial, o de una nota marginal, según los casos." 30 L.P.R.A. sec. 257.

Sobre la innecesidad de la autorización expresa introducida por el Art. 138 de la Ley Hipotecaria española (equivalente al 184 P.R.) comenta Marín Pérez: "Estimamos que la figura jurídica del art. 138 de la ley Hipotecaria era ya admitida, aunque no de un modo explícito, por la legalidad anterior a la reforma. Basta para darnos cuenta de ello con analizar el contenido de los arts. 110 y 144 de la ley Hipotecaria [el mismo 144 de nuestra Ley de 1893] para comprender cómo, *mediante pacto,* se podía limitar la responsabilidad en la forma que determina el párrafo segundo del nuevo art. 138." Marín Pérez, *op. cit.,* págs. 456–457.

Roca Sastre evoluciona en su criterio hasta lo categórico:

". . . [S]olamente puede admitirse dicha concreción de la responsabilidad personal por vía de convención o pacto de limitación de la responsabilidad. Admitidos como lícitos estos pactos, es evidente que ya antes de la reforma podía llegarse al mismo resultado. Pero, aunque esto reste novedad al precepto nuevo, con todo, éste tiene la utilidad de evitar dudas, por lo que su formulación es digna de encomio, sobre todo teniendo en cuenta que dicha concreción nace del pacto, a diferencia de Cuba en que es preceptiva." *La Nueva Ley de Reforma Hipotecaria,* 177 Rev. Gen. Legislación y Jurisprudencia 257, 320 (1945).

crédito en lo relativo al valor del inmueble y al rango de su acreencia. En el campo del comercio hay elementos imponderables y aleatorios capaces de tornar un pacto lícito en un mal negocio.

Que la supresión del ejercicio de la acción personal y la renuncia por el acreedor hipotecario al déficit resultante de la ejecución, no son innovaciones instituidas por el Art. 184 de la Ley Hipotecaria de 1979, es conclusión forzosa inducida por la preexistencia en nuestro ordenamiento jurídico de los preceptos antes aludidos; y como sostiene M. Nin y Abarca, "sin necesidad del nuevo texto, nada impedía al acreedor hipotecario renunciar *a priori* a la acción personal contra su deudor ni cond[o]narle *a posteriori* el remanente del importe no satisfecho otorgándole carta de pago por la totalidad del crédito, como señala el artículo 1.872 del Código civil [Art. 1771 P.R.] para los casos de adjudicación de la prenda. Si tenemos en cuenta la regla de Derecho que dice: 'se entiende permitido lo que no está prohibido', hay que convenir que el segundo párrafo del artículo 138 [Art. 184 P.R.] es simplemente enunciativo y recordatorio". *La Hipoteca de Responsabilidad Limitada*, 20 Rev. Crítica de Derecho Inmobiliario 292, 296 (1947).

Como complemento de suficiente afirmación habilitadora en la anterior ley, del pacto de limitación de responsabilidad en la hipoteca, puede aducirse en abono a su validez la total ausencia de prohibición del mismo. Refiriéndose a la amplitud de la iniciativa contractual en la declaración del Art. 1861 C.C. (Art. 1760 P.R.) al efecto de que la hipoteca puede asegurar toda clase de obligaciones, puras o condicionales, señala Manresa[6] como condición única, que la obligación sea lícita y no esté prohibida por la ley. Recoge así la norma del Art. 1207 C.C. que no impone más barreras a la autonomía de la voluntad que la ley, la moral

---

[6] *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1973, T. 12, pág. 538.

y el orden público, y mientras sus convenciones se ajusten a dicho principio, "[l]as personas pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente en sus negocios y obras . . .". *Castle Enterprises, Inc.* v. *Registrador*, 87 D.P.R. 775, 781 (1963).

La hipoteca, privada por pacto de los contratantes de la responsabilidad patrimonial genérica, tiene para de la Rica Arenal una figura similar a la hipoteca independiente que, al desligarse de la obligación personal, deja de ser accesoria y se convierte en un ente jurídico dotado de autonomía. Transmitida la finca bien por negocio oneroso, bien por consecuencia de ejecución instada por otro acreedor, queda el primitivo deudor completamente liberado.[7] Al segundo acreedor hipotecario, barrido del Registro por el remate de una hipoteca preferente, le es de todo punto imposible el ejercicio de la acción personal.[8] En la hipoteca autónoma de responsabilidad limitada, muere la obligación al nacer la hipoteca. Roca Sastre destaca como figura resultante del pacto de concreción de la responsabilidad personal a la finca hipotecada un débito personal tan pegado o adherido al gravamen hipotecario, que viene a ser un simple accesorio de éste (y viceversa), pues le sigue donde aquél vaya a parar en las sucesivas transmisiones de la finca gravada. Así el débito personal parece quedar tan diluido o subsumido en la entraña misma del gravamen, que la extinción de la hipoteca por la realización del valor en cambio de la cosa gravada, efectuada en méritos de la ejecución hipotecaria, provoca también la extinción del débito personal correspondiente, aunque no se haya cubierto el importe de la obligación garantida.[9]

---

[7] De la Rica Arenal, *La obligación personal y la responsabilidad real en las nuevas modalidades de hipoteca*, 4 Anales de la Academia Matritense del Notariado 281, 304 y ss. (1948).

[8] Nin y Abarca, *op. cit.,* pág. 308.

[9] Roca Sastre, *Derecho Hipotecario,* 7ma ed., 1979, T. IV, Vol. 1, págs. 404–406.

*La sentencia revisada será revocada.*

El Juez Presidente Señor Trías Monge y los Jueces Asociados Señores Dávila y Torres Rigual intervienen por regla de necesidad para constituir quórum; los Jueces Asociados Señores Negrón García y Rebollo López se inhibieron.

—O—

## RESOLUCIÓN

## EN RECONSIDERACIÓN

San Juan, Puerto Rico, a 29 de noviembre de 1982

A la moción de reconsideración del demandante recurrido René Aponte Caratini, presentada el 4 de noviembre de 1982, y del demandante recurrido Enrique Campos del Toro, hoy su sucesión, presentada el 12 de noviembre de 1982, no ha lugar.

■ En cuanto al aspecto jurisdiccional del que nos ocupamos en el escolio núm. 2 de nuestra opinión, valga aclarar que el requisito de notificación mediante correo certificado a que se refiere la Regla 53.3 de Procedimiento Civil no es lo determinante de nuestra jurisdicción. *Insular Feed Corp.* v. *Díaz*, 99 D.P.R. 145, 149 (1970). Lo determinante es que la notificación se haga "dentro del término" para solicitar la revisión. Regla 53.3. Dicha notificación se perfecciona si se hace por correo, "al ser depositada en el correo". Regla 67.2 de Procedimiento Civil.

■ El requisito de que, si se hace la notificación por correo se haga por correo certificado, es uno de conveniencia a los fines de establecer cumplidamente y sin lugar a dudas la fecha del depósito en el correo. Ello no quiere decir que por otros medios, igualmente efectivos, no pueda establecerse la fecha de la notificación. Tal es el caso de autos. Independientemente de que no se cumpliera al pie de la letra con el trámite requerido para el envío por correo certificado, es un hecho indisputado que la copia de la petición

fue recibida el 9 de diciembre de 1981.([1]) Ello es suficiente prueba corroborativa de que se depositó en el correo el día 7 de diciembre, fecha en que se cumplía el término para la presentación del recurso. Tomamos conocimiento judicial de que dos días, y a veces tres, es el período que por lo general se toma el servicio de correos en el trámite de entregar una pieza de correspondencia, a partir de su depósito en una estación u oficina postal.

En cuanto al aspecto de la hora, resolvimos en *Tim Mfg. Co.* v. *Shelley Enterprises, Inc.*, 107 D.P.R. 530, 533 (1978), que ". . . el trigésimo o último día hábil para presentar en la Secretaría del Tribunal la solicitud de revisión termina a las 5:00 p.m. en que a tenor de la Regla 8(a) del Reglamento del Tribunal se cierra la oficina del Secretario". Ello no significa que la notificación al abogado de la parte contraria tenga que hacerse antes de esa hora. Nuevamente, se trata de una medida de conveniencia. Es en la Secretaría de este Tribunal donde se deben presentar las peticiones de revisión, y nuestra Secretaría cierra a las 5:00 p.m. La notificación al abogado puede hacerse a cualquier hora antes de la medianoche del último día hábil para la presentación de la petición. Si se utiliza el correo, debe quedar claro, sin lugar a dudas, que el depósito se hace antes de la medianoche del último día hábil. En este caso estamos plenamente convencidos de que así se hizo y, por tanto, tenemos jurisdicción.

Lo acordó el Tribunal y certifica la Secretaria General. Los Jueces Asociados Señores Negrón García y Rebollo López se inhibieron.

(*Fdo.*) Lady Alfonso de Cumpiano
*Secretaria General*

---

([1]) Nuestra decisión emitida en *Universal Leasing, Inc.* v. *Chris Craft Corp.*, Núm. R-81-155, es distinguible, pues en dicho caso la notificación de la petición fue recibida por la parte recurrida tres semanas después de vencido el término para su presentación.