Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **UNIVERSAL INSURANCE COMPANY Y OTROS**<br><br>Apelantes<br><br>v.<br><br>**ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS**<br><br>Apelados | KLAN202400959 | ***APELACIÓN***<br>procedente del Tribunal de Primera Instancia Sala Superior de **Humacao**<br><br>Caso Número: HU2024CV00215 (Salón 208)<br><br>Sobre: **IMPUGNACION DE CONFISCACION (LEY NUM. 119-2011)** |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de enero de 2025.

Comparece ante nos, Oriental Bank and Trust y Universal Insurance Company, en adelante, apelante, solicitando que revisemos la *"Sentencia"* notificada por el Tribunal de Primera Instancia, Sala de Humacao, en adelante, TPI-Humacao, el día 30 de agosto de 2024. Mediante el referido dictamen, el Foro Primario desestimó por falta de jurisdicción la demanda presentada por la apelante impugnando la confiscación de un vehículo de motor.

Por los fundamentos que expondremos a continuación, *revocamos* la *"Sentencia"* apelada.

**I.**

El *17 de noviembre de 2023*, el concesionario de autos Adriel vendió un vehículo de motor marca Nissan del año 2024, financiado por Oriental Bank and Trust, a Stephanie Michelle Torres Lebrón.[1] No obstante, la solicitud de gravamen mobiliario, en la que Oriental

---
[1] Apéndice del recurso, págs. 40-41.

Bank and Trust obra como acreedora del auto confiscado, fue presentado unas semanas más tarde, el *7 de diciembre de 2023*.[2] Sin embargo, este fue expedido el 31 de enero de 2024.[3]

Ahora bien, el *26 de diciembre de 2023*, el vehículo de motor en cuestión fue confiscado por el Estado Libre Asociado de Puerto Rico, en adelante, ELA o apelada, por alegadamente ser utilizado en violación a la Ley de Sustancias Controladas, Ley Núm. 4 de 23 de junio de 1971, 24 LPRA sec. 2101 *et seq*.[4] Por estos hechos, la apelante presentó una *"Demanda"* ante el TPI-Humacao impugnando la confiscación del auto financiado, el 20 de febrero de 2024.[5] En la misma, arguyó que la confiscación aludida fue ilegal, al incumplir con la Ley Uniforme de Confiscaciones de Puerto Rico, en adelante, Ley de Confiscaciones, Ley 119-2011, 34 LPRA 1724 *et seq*, y por no haber sido notificada de la confiscación dentro del término legal para ello.

El 1 de abril de 2024, la apelada presentó su *"Contestación a Demanda"*.[6] Por su parte, la apelada solicitó que el TPI-Humacao ordenara a la apelante a presentar documentos que evidenciaran su legitimación para el reclamo, y ordenara una vista al respecto. El 31 de abril de 2024, el Foro Apelado señaló una vista de legitimación activa para el 29 de mayo de 2024.[7] La misma fue celebrada finalmente el 2 de julio de 2024, y se le concedió a la apelante un término de quince (15) días para presentar un memorando de derecho en apoyo a su postura, y el mismo término al apelado para replicar.

Evaluados los memorandos en cumplimiento de orden a las partes, el Foro Primario emitió su *"Sentencia"* el 30 de agosto de

---

[2] Apéndice del recurso, pág. 38.
[3] *Id.*, pág. 35.
[4] *Id.*, págs. 10 y 25.
[5] *Id.*, pág. 22.
[6] *Id.*, pág. 25.
[7] *Id.*, pág. 33.

2024.[8] En su dictamen, el TPI-Humacao desestimó el reclamo de la apelante, por entender que esta no demostró legitimación activa, conforme a lo dispuesto en el Artículo 15 de la Ley de Confiscaciones, supra, sec. 17241. Inconforme, la apelante radicó una *"Moción de Reconsideración"* el 9 de septiembre de 2024.[9] El 24 de septiembre de 2024, la apelada presentó su oposición a la reconsideración.[10] Finalmente, el 27 de septiembre de 2024, el Foro Apelado declaró *"No Ha Lugar"* la solicitud de reconsideración.[11]

Así las cosas, el 24 de octubre de 2024, la apelante presentó el recurso ante nuestra consideración, haciendo el siguiente señalamiento de error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE HUMACAO, AL DETERMINAR QUE ORIENTAL BANK AND TRUST NO POSEE LEGITIMACIÓN ACTIVA PARA PRESENTAR LA DEMANDA DE AUTOS AUN DEMOSTRANDO UN INTERÉS PROPIETARIO SOBRE EL VEHÍCULO CONFISCADO.

El 30 de octubre de 2024, emitimos una *"Resolución"* en la que ordenamos al ELA a presentar su posición en cuanto al recurso, conforme dispone la Regla 22 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 22. Luego de una prórroga, el apelado radicó ante nos su *"Alegato en Oposición"* el 4 de diciembre de 2024.

Perfeccionado el recurso que nos ocupa, procedemos a resolver.

## II.

### A. Apelación

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda

---

[8] Apéndice del recurso, pág. 3.
[9] *Id.*, pág. 5.
[10] *Id.*, pág. 9.
[11] *Id.*, pág. 1.

demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, apelación) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la apelación se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro apelativo intermedio cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Tribunal de Primera Instancia". *Freire Ruiz de Val v. Morales Román*, 2024 TSPR 129, 214 DPR ___ (2024); *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019); Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 y R. 52.2. Véase, R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La apelación no es un recurso discrecional como en los casos de certiorari. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia

con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.,* 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007).

### B. Legitimación Activa

El concepto legitimación activa se ha desarrollado en la jurisdicción federal al amparo del Artículo III de la Constitución de los Estados Unidos. Su fundamento descansa en que los tribunales federales sólo atienden controversias judiciales, y no pueden ofrecer opiniones consultivas. *Food and Drug Administration v. Alliance for Hippocratic Medicine,* 602 US 367, 378 (2024); *Carney v. Adams,* 592 US 53, 58 (2020). Al igual que ocurre en la jurisdicción federal, en Puerto Rico, la revisión judicial solo puede ejercerse en un caso o controversia. *Rivera Segarra y otros v. Rivera Lasen y otros,* 2024 TSPR 60, 213 DPR ___ (2024); *Hernández Montañez v. Parés Alicea,* 208 DPR 727, 738 (2022); *Aponte Rosario et al. v. Pres. CEE,* 205 DPR 407, 452 (2020); *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 932 (2011); *Fund. Surfrider y otros v. ARPe,* 178 DPR 563, 571 (2010); *Romero Barceló v. ELA,* 169 DPR 460, 475 (2006); *E.L.A. v. Aguayo,* 80 DPR 552, 558–559 (1958).

Como elemento esencial para la adjudicación de los méritos de una controversia, el principio de justiciabilidad impone a los tribunales el deber de examinar si la parte que acude a su auxilio ostenta legitimación activa para actuar de conformidad. *Rivera Santana y otros v. Rivera Lasén y otros,* supra; *Hernández, Santa v. Srio. de Hacienda,* 208 DPR 727, 738-739 (2022). Esta figura se define como "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante". *Bhatia Gautier v. Gobernador,* 199 DPR 59,

69 (2017). El propósito de la legitimación activa es que el tribunal se asegure de que la parte reclamante tiene un interés genuino, va a perseguir su causa vigorosamente y que todos los asuntos pertinentes serán presentados ante la consideración del juzgador. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163, 178-179 (2022). Así, la parte que solicita un remedio judicial debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño y la causa de acción ejercitada, y (4) la causa de acción surge al palio de la Constitución. *Hernández Montañez v. Pares Alicea*, supra, pág. 739; *Bhatia Gautier v. Gobernador*, supra, pág. 69; *Fund. Surfrider y otros v. A.R.Pe.*, supra, pág. 572; *Sánchez et al. v. Srio. de Justicia et al.*, 157 DPR 360, 371 (2002).

Ahora bien, la legitimación activa se ha discutido extensamente en los casos de confiscación civil. Para tener legitimación activa, la parte que impugne la confiscación debe demostrar primero la titularidad o interés propietario en la propiedad. *Mapfre v. ELA*, 188 DPR 517, 529 (2013). Por ello, luego que una parte interesada presente una demanda para impugnar una confiscación, y el reclamo sea contestado, "el Tribunal ordenará una vista sobre legitimación activa para establecer si el demandante ejercía dominio y control sobre la propiedad en cuestión antes de los hechos que motivaron la confiscación. De no cumplir con este requisito, el Tribunal ordenará la desestimación inmediata del pleito". Ley de Confiscaciones, supra, sec. 1724l.

Ahora bien, según consta en su Exposición de Motivos, el legislador aprobó la Ley 262-2012 para, entre otras cosas, aclarar el alcance de la Ley de Confiscaciones, supra, con relación a la legitimación activa de los acreedores garantizados por los bienes incautados. Así, explicó que el estatuto en cuestión no refleja el interés propietario que jurisprudencialmente se le ha reconocido a

las entidades financieras sobre los bienes sujetos a confiscación. *First Bank, Univ. Ins. Co. v. ELA*, 156 DPR 77 (2002); *Del Toro Lugo v. ELA*, 136 DPR 973 (1994). Específicamente, dispuso que se le reconociera "el interés propietario de los acreedores que posean un gravamen inscrito sobre el bien sujeto a la confiscación en el momento de su ocupación". Exposición de Motivos, Ley 262-2012.

De esta manera, como parte de las enmiendas incorporadas a la Ley de Confiscación, supra, por virtud de la Sección 1 de la Ley 262-2012, se estableció que "[p]ara fines de esta Ley [de Confiscaciones] se considerará 'dueño' de la propiedad una persona que demuestre tener interés propietario en la propiedad incautada, incluyendo una persona que posea un gravamen sobre dicha propiedad a la fecha de ocupación de la propiedad incautada, o una cesión válida de tal interés propietario".

### C. Ley de Confiscaciones

A través de la confiscación se le confiere al Gobierno el título de aquellos bienes utilizados para fines ilícitos al amparo de cualquier estatuto que así lo autorice. 34 LPRA sec. 1724f. En otras palabras, la confiscación es el acto mediante el cual el Estado se adjudica bienes que han sido utilizados para la comisión de determinados delitos. *Reliable Financial v. ELA*, 197 DPR 289, 296 (2017); *Reliable v. Depto. de Justicia y otros*, 195 DPR 917, 924 (2016); *Doble Seis Sport TV v. Depto. Hacienda*, 190 DPR 763, 784 (2014); *Coop. Seg. Mult. v. ELA*, 180 DPR 655, 664 (2011); *Rodríguez Ramos v. ELA*, 174 DPR 194, 202 (2008).

Los Artículos 9 y 10 de la Ley de Confiscaciones, supra, seccs. 1724f y 1724g, dispone sobre los bienes sujetos a confiscación, y aclara qué tipo de bienes privados pueden ocuparse, quienes están autorizados para efectuar esta incautación y bajo qué circunstancias. El referido Artículo 9 establece que el Estado puede

confiscar toda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando estos se encuentren tipificados en el Código Penal de Puerto Rico o legislaciones especiales.

Sobre la naturaleza civil del proceso confiscatorio, nuestro Tribunal Supremo ha expresado que, "[i]ndependientemente de la naturaleza civil de la confiscación[,] los estatutos confiscatorios ***deben interpretarse restrictivamente*** ya que, a pesar de tratarse de una acción de naturaleza civil, la forma en que es aplicada la sanción, el procedimiento que se utiliza y las defensas permitidas en éste, reflejan un propósito punitivo". *Reliable Financial v. ELA*, supra, pág. 297; *Doble Seis Sport v. Depto. Hacienda*, supra, 789; *Santiago v. Spte. Policía de PR*, 151 DPR 511, 515 (2000). (Énfasis nuestro).

En lo relacionado a los vehículos de motor, el Tribunal Supremo ha resuelto que la confiscación de un vehículo constituye una privación de la propiedad que obliga al Estado a cumplir con las garantías mínimas del debido proceso de ley. *Reliable v. Depto. Justicia y ELA*, supra, págs. 924–925; *Santiago v. Spte. Policia de PR*, supra, a la pág. 517. La notificación adecuada es uno de los preceptos del debido proceso de ley en su modalidad procesal. *Íd.* En torno a la confiscación, el vigente esquema normativo establece un procedimiento expedito con requisitos estrictos aplicables tanto al Estado, como a las partes con interés en los bienes confiscados. De esta manera, el Artículo 13 de la Ley de Confiscaciones, supra, sec. 1724j, establece que la notificación de la confiscación a las partes con interés debe realizarse en conformidad con lo siguiente:

> El Director Administrativo de la Junta notificará la confiscación y la tasación de la propiedad a las siguientes personas:
> [...]

c) en los casos de vehículos de motor, se notificará, además, al dueño, según consta en el Registro de Vehículos del Departamento de Transportación y Obras Públicas y al acreedor condicional que a la ocupación tenga su contrato inscrito.

[...]

Toda confiscación se notificará por correo certificado dentro de un término jurisdiccional de treinta (30) días, siguientes a la fecha de la ocupación física de los bienes. La notificación se hará a la dirección conocida del alegado dueño, encargado o persona con derecho o interés en la propiedad, según consta del expediente de la confiscación.

(Énfasis nuestro).

Según expresado por nuestro Tribunal Supremo, la descrita notificación tiene el propósito de salvaguardar los derechos constitucionales de una parte interesada en la propiedad confiscada, de manera que se le pueda brindar la oportunidad para que presente y pruebe todas las defensas válidas pertinentes a su reclamo. *Reliable v. Depto. Justicia y ELA*, supra, pág. 925.

### i.      Tercero inocente

Relevante al caso de autos, nuestra jurisprudencia ha desarrollado normas para proteger los derechos de aquellos que tienen un interés económico o propietario en el vehículo confiscado, pero que no estuvieron directamente implicados en la actividad criminal que motivó la confiscación. *First Bank, Univ. Ins. Co. v. E.L.A.,* supra, pág. 83. Como parte del procedimiento de impugnación de confiscación, el dueño del vehículo de motor o el que tuviera interés legal sobre el vehículo que impugne la confiscación puede levantar lo que jurisprudencialmente se ha denominado como la doctrina del tercero inocente. *Coop. Seg. Múlt. v. E.L.A.,* supra, pág. 666; *First Bank, Univ. Ins. Co. v. E.L.A.,* supra, pág. 83. Mediante la *doctrina del tercero inocente*, el dueño de la propiedad confiscada o con interés legal sobre esta, reclama su

inocencia y alega que no se le puede privar del bien por la conducta punitiva del tercero criminal.

Se ha resuelto que el propietario del vehículo de motor, los intereses económicos de una entidad financiera y su aseguradora bajo un contrato de venta condicional podrían ser considerados como terceros inocentes. *First Bank, Univ. Ins. Co. v. E.L.A.*, supra, pág. 83. El que levante la defensa de tercero inocente debe demostrar que no consintió a la entrega voluntaria de la posesión de su vehículo a la persona que incurrió en la conducta criminal que se imputa y por la cual se confisca la propiedad. *Coop. Seg. Múlt. v. E.L.A.*, supra, pág. 667. Se evaluará que el alegado tercero inocente no incurriera en un comportamiento culpable o reprochable al permitir o no supervisar adecuadamente el uso que se le daría al vehículo, pues, precisamente, la confiscación busca castigar ese tipo de conducta desinteresada por evitar la comisión de crímenes, además de la propia comisión del delito. *Íd.* En fin, debe demostrarse que: 1) el propietario no puso el vehículo voluntariamente en posesión del que cometió el crimen, o 2) se tomaron medidas cautelares expresas para evitar el uso ilegal del bien. *General Accident Ins. Co. v. E.L.A.,* 137 DPR 466, 472-473 (1994). A esos efectos, nuestro Máximo Foro resumió que:

> La doctrina de tercero inocente protege al propietario o al tenedor de interés legal o económico en el vehículo en aquellas situaciones en que éstos no han puesto el vehículo en posesión del infractor voluntariamente, o cuando se han tomado medidas cautelares expresas para precaver el uso ilegal de la propiedad en la comisión del delito. El carácter de tercero inocente depende de la naturaleza de la posesión o el uso que del vehículo haga el infractor. Si éste no obtuvo la posesión de manera voluntaria o si se apartó sustancialmente de las medidas cautelares o las instrucciones particulares expresadas de quien entregó dicha posesión o uso, entonces es que tanto el dueño como el vendedor condicional o cualquier otro con interés en éste son terceros inocentes protegidos contra la confiscación.

*First Bank, Univ. Ins. Co. v. E.L.A.,* supra, págs. 83-84.

Al momento de demostrar los elementos de la figura del tercero inocente, no existe diferenciación entre un dueño del vehículo de motor o los intereses económicos de una entidad financiera y su aseguradora. En ambos casos, el interesado, sea el propietario del vehículo de motor; *una entidad financiera,* o *una aseguradora,* tiene que demostrar los elementos mencionados de la figura de tercero inocente. *General Accident Ins. Co. v. E.L.A,* supra, págs. 473-474.

### D. Hermenéutica

La hermenéutica legal es el proceso de interpretar las leyes; es decir, auscultar, averiguar, precisar y determinar cuál ha sido la voluntad legislativa. Este método de interpretación se utiliza en la interpretación de estatutos, contratos, testamentos, reglamentos administrativos y cualquier otro documento. R. Elfren Bernier y J. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico,* 2da ed. rev., San Juan, Pubs. JTS, 1987, Vol. I, pág. 241; *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 717, 738 (2012).

Los tribunales tienen la facultad de interpretar las leyes cuando no son claras o concluyentes sobre un punto particular. Aún más importante, los foros judiciales pueden ejercer esta función interpretativa cuando es necesario suplir una laguna en el estatuto. Además, el juez debe ponderar la prueba para descubrir elementos que con dificultad están al descubierto, y que aún con su limitada visibilidad, suelen ser las piezas que ponen en relieve el cuadro de la controversia, de manera completa. Es importante que lo que se produzca sea "una solución que sea cónsona con la idea animadora del derecho, que es la justicia". Elfren Bernier y Cuevas Segarra, op. cit., pág. 288.

De otra parte, la doctrina de hermenéutica legal *casus omissus* establece que las omisiones del legislador no pueden ser curadas por los tribunales. R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 43, pág. 311. Además, Antonin Sacalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, pág. 97 (2012). Es decir, ***"el tribunal no está autorizado a adicionar limitaciones o restricciones que no aparecen en el texto de la ley, ni a suplir omisiones al interpretarla con el pretexto de buscar la intención legislativa".*** *Com. Elect. PPD v. CEE et al.* 205 DPR 724, 755 (2020), citando a *Rosado Molina v. ELA y otros*, 195 DPR 581, 589–590 (2016). (Énfasis suplido). Más aun, cuando desde tiempo inmemorial se reconoce como principio general de derecho que "lo no prohibido está permitido". *Pueblo v. Román Feliciano*, 181 DPR 679, 687 (2011); *Campos del Toro v. Ame. Transit Corp.,* 113 DPR 337, 345 (1982). Victoria Iturralde Sesma, *Consideración crítica del principio de permisión según el cual "lo no prohibido está permitido",* pág. 211, País Vasco, España (1998) citando a Hans Kelsen, *Teoría General del Estado*, pág. 290 (1934). Si existe silencio o insuficiencia de la ley, el juzgador podrá resolver conforme a equidad, y se guiará por la razón natural y los principios generales del derecho. *Alonso Piñero v. UNDARE, Inc.,* 199 DPR 32, 53 (2017).

**III.**

La apelante recurre ante nos solicitando que revisemos la desestimación de su *"Demanda"* por impugnación de confiscación, contra el ELA. Arguye que el TPI-Humacao se equivocó al determinar que no tenía legitimación activa para su reclamo, aun cuando demostró el interés propietario que ostenta sobre el vehículo confiscado. *Le asiste razón.*

La controversia que nos ocupa es una estrictamente de derecho, y sobre asuntos de interpretación con relación a la Ley de Confiscaciones, supra. Como reseñamos previamente, cuando un vehículo es confiscado por el Estado, en virtud de las garantías del debido proceso de ley, los dueños del mismo pueden impugnar la incautación del mismo. El referido estatuto reconoce por *"dueño"* a cualquier parte que demuestre tener un *interés propietario* sobre el bien confiscado. De esta manera, acreedoras financieras y aseguradoras gozan de legitimación activa para presentar una demanda de impugnación. Tan preocupado estaba el Legislador con aclarar la facultad de este tipo de dueño para impugnar una confiscación, que al otro año de entrar en vigor la Ley de Confiscación, supra, la enmendó para establecerlo textualmente.

Ahora bien, justipreciamos que la polémica interpretativa del caso de marras, con relación a si la apelante demostró ser dueña con interés sobre el vehículo incautado, se centra en la fecha real en la que el gravamen de Oriental Bank and Trust quedó oficialmente inscrito. De los documentos que obran en autos surge que la venta condicional del auto confiscado, y financiado por la apelante, se concretizó el día *17 de noviembre de 2023*. La solicitud para inscribir el gravamen mobiliario fue presentada el *3 de enero de 2024*, y expedido el *31 de enero de 2024*. Sin embargo, la confiscación objeto de la controversia surgió el 26 de diciembre de 2023.

Al examinar el estatuto correspondiente, el mismo dispone que para los efectos de la Ley de Confiscaciones, supra, sec. 1724l "se considerará 'dueño' de la propiedad una persona que demuestre tener interés propietario en la propiedad incautada, ***incluyendo*** una persona que posea un gravamen sobre dicha propiedad a la fecha de ocupación de la propiedad incautada, o una cesión válida de tal interés propietario". (Énfasis nuestro).

La apelante nos señala que de la sección previamente reseñalada no surge que la expedición del registro del gravamen a favor de una entidad financiera sea un requisito para considerar a estos últimos dueños de un bien confiscado. Por el contrario, la apelada sostiene que la inscripción oficial del gravamen sí lo es. Para sustentar su planteamiento, arguye que en la Exposición de Motivos de la Ley 262-2012, la cual incorporó el texto referido, el legislador dejó su voluntad con respecto a esto clara. A estos fines, nos cita que en la misma se dispuso que se le reconocería "el interés propietario de los acreedores que posean un ***gravamen inscrito*** sobre el bien sujeto a la confiscación en el momento de su ocupación". (Énfasis nuestro).

Es necesario analizar ambas interpretaciones a la luz de la voluntad legislativa, que a nuestro juicio, se desprende del estudio del derecho aplicable en este caso. Lo cierto es que los esfuerzos de la Ley de Confiscaciones, supra, la enmienda de la Ley 262-2012 y la jurisprudencia que trastoca sus matices, se ha inclinado a extender los contornos de la Ley de Confiscaciones, supra, para proteger a acreedores y aseguradoras con intereses propietarios sobre bienes incautados.

Estamos de acuerdo con la apelante, quien señala que en la definición de "dueño" no surge nada con respecto a la expedición del registro del gravamen a favor de acreedores por venta condicional. Además, si estudiamos con detenimiento el texto, el mismo dispone que "dueño" es aquel que demuestre tener un interés propietario. Añade el estatuto que esto *puede incluir*, quien tenga un gravamen inscrito sobre la propiedad a la fecha de su confiscación o una cesión válida de ese interés propietario. Es decir, la inscripción del gravamen puede ser un método para probar el interés propietario, pero no es un requisito *sine qua non* para evidenciar el mismo. Además, como expusimos en la sección anterior, la hermenéutica

judicial nos apercibe a abstenernos de añadir restricciones que de otra forma no surgen, en el ejercicio interpretativo de un estatuto.

Luego de evaluar los documentos que el TPI-Humacao tuvo ante sí, nos es forzoso concluir que la apelante demostró tener un interés propietario sobre el vehículo de motor incautado. Esto, ya que demostró ser la entidad que financió el bien privado – en este caso el vehículo. En consecución, tiene derecho a reclamar su inocencia, impugnar la confiscación, e impedir que se le prive del bien sobre el cual tienen un interés propietario.

Creemos que los documentos de la venta condicional y la solicitud de registro son suficientes para probar que Oriental Bank and Trust sí tuvo legitimación activa para incoar la demanda contra el ELA. La apelante fue diligente, y presentó la solicitud de registro inmobiliario el 3 de enero de 2024. La postura del Foro Primario tiene el efecto de invalidar los derechos y remedios que la Ley de Confiscaciones, supra, le ha otorgado a la apelante, por el mero paso del tiempo, y a consecuencia de una demora registral sobre la cual esta no tiene control ni inherencia.

Finalmente, en el año 2013, un panel hermano resolvió una controversia similar a la de autos, e interpretó los estatutos que aquí nos ocupan. Hacemos eco de las siguientes expresiones, por entenderlas asertivas y pertinentes a la posición que hoy adoptamos y reafirmamos en esta sentencia: "en la balanza de la justicia pesan más los derechos propietarios de un 'tercero inocente' que las formalidades para la **inscripción** de esos derechos".[12]

## IV.

Por los fundamentos antes expuestos, *revocamos* la *"Sentencia"* apelada, y *devolvemos* el caso al Foro Primario, para la

---

[12] KLAN201300665.

*continuación* de los procedimientos en conformidad a lo aquí resuelto.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones